**SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Cities of Anaheim, et al., Intervenors.**

**No. 85–1718.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1986.

Decided Nov. 25, 1986.

Brian J. McManus, Washington, D.C., with whom Richard M. Merriman and Daniel John Regan, Jr. and Frank J. Cooley, were on the brief, for petitioner.

Joel M. Cockrell, Atty., F.E.R.C., Washington, D.C., for respondent. Jerome M. Feit, Solicitor and A. Karen Hill, Atty., F.E.R.C., were on the brief, for respondent.

James N. Horwood, P. Daniel Bruner, Arnold Fieldman and John Michael Adragna, Washington, D.C., were on the brief, for intervenors, the Cities of Anaheim, et al.

Before STARR and SILBERMAN, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case calls upon us to review an agency reading of a provision commonly found in electric utility contracts. Specifically, the issue is whether the Federal Energy Regulatory Commission correctly interpreted a fuel adjustment clause to re-

quire a regulated utility to remit to its wholesale customers refunds received by the utility from its fuel suppliers. For the reasons that follow, we conclude that the Commission's decision was correct. We therefore deny the petition for review.

## I

Southern California Edison Company ("Edison") is a large, investor-owned electric utility that provides service in Southern and Central California. In addition to substantial retail sales, Edison makes wholesale sales of electricity subject to the regulatory jurisdiction of the Federal Energy Regulatory Commission. Among Edison's wholesale customers are the intervenors, six California cities, including the communities of Anaheim and Riverside.

At all times relevant to this proceeding, Edison employed a fixed-rate fuel adjustment clause in computing its bills to wholesale customers. As its name suggests and this court has described it, "[a] fuel adjustment clause is a device that allows a utility to pass on to its customers the increasing cost of fuel without filing a new rate schedule each time the price of fuel rises." *Anaheim v. FERC*, 669 F.2d 799, 806 (D.C.Cir. 1981). FACs, as they appear to be called in the parlance of the industry, are thus sensible management-efficiency devices aimed at reducing the flow of paper from across the Nation to agency offices at the seat of government.

We gather that two genres of fuel adjustment clauses are in use these days: the type presently before us, namely fixed-rate clauses, and cost-of-service clauses. Under fixed-rate clauses, billings for a particular period are calculated by adjusting the energy charge to reflect the price of fuel in a previous period, known as the "test period." The actual price of fuel during the test period functions as a "proxy," as it were, for the cost of fuel used during the service period. Under a cost-of-service clause, in contrast, billings are constantly adjusted to reflect the full and actual cost of fuel during the billing period. Cost-of-service clauses are more finely calibrated, more accurate, and thus more complex to administer than fixed-rate tariffs. In contrast, fixed-rate clauses are more efficient and less unwieldy, but less accurate.

Over a period extending from 1974 to 1981, Edison received refunds from its fuel suppliers totaling approximately $4.4 million.[1] Upon discovering this fact, intervenors petitioned the Commission to require Edison to pass along those refunds. Edison resisted, arguing that it was not required to make such refunds because the fixed-rate FAC barred any billing adjustments after the close of the billing period. As a fallback position, Edison argued that it should be permitted to retain the refunds as partial compensation for the approximately $17.7 million in undercollections occasioned by its switch in 1981 from a fixed-rate to a cost-of-service fuel adjustment clause. Intervenors, on the other hand, contended that Edison's retention of the refunds resulted in the wholesale customers' being saddled with unlawfully excessive fuel costs.

The Commission accepted the Cities' contention, concluding that Edison's retention of refunds amounted to imposing excessive fuel costs on its jurisdictional sales. The Commission rejected Edison's arguments on two grounds: *first*, that under a fixed-rate tariff, the price of fuel in the test period must, in the agency's view, reflect the *actual price* paid for fuel used during the test period; *second*, that Edison was not entitled to retain the supplier refunds as partial compensation for the approximately $17 million in undercollections. Such undercollections could not be recovered, the Commission determined, by *directly* charging the wholesale customers. Such a charge, the Commission opined, would run afoul of the well-established

---

1. Prior to the inception of this litigation, Edison discontinued its use of a fixed-rate FAC in favor of a cost-of-service FAC. The revised clause became effective July 16, 1981. This case, ac-

cordingly, involves only refunds Edison received from suppliers relating to billings during the period that Edison employed a fixed-rate clause (May 1974 to July 1981).

"filed rate" doctrine.[2] As a result, the agency concluded, Edison could not properly recover such amounts *indirectly* by retaining the fuel supplier refunds. Accordingly, the Commission required Edison to remit the fuel supplier refunds to its wholesale customers. *See City of Vernon v. Southern California Edison Co.*, 31 F.E.R.C. ¶ 61,113, *rehearing denied*, 32 F.E.R.C. ¶ 61,372 (1985).

Edison sought rehearing. In addition to its previous, unsuccessful arguments, Edison asserted that by imposing refund obligations the Commission was in effect amending its regulations without following the requisite steps under the Administrative Procedure Act, 5 U.S.C. § 553 (1982). Edison further argued that, even if the Commission's order were considered an adjudication rather than a rulemaking, the Commission had unlawfully failed to justify its departure from prior practice. *See id.* § 554(b).

In denying Edison's request for rehearing, the Commission rejected Edison's argument that the Commission was retroactively applying a new policy. There was, to the contrary, no new policy at all. Existing regulations, the Commission stated, required utilities to comply with their respective fuel adjustment clauses, and existing regulations required that only just and reasonable charges be collected under a fuel adjustment clause. To remove excessive fuel costs charged to Edison's wholesale customers and thereby comply with the utility's FAC, Edison was obliged, the Commission determined, to make refunds to its wholesale customers. *See City of Vernon*, 32 F.E.R.C. ¶ 61,372. This petition followed.

## II

The principal contention pressed by Edison is that the Commission has improperly blurred the distinction between fixed-rate and cost-of-service FACs. Edison argues that, although billing under a cost-of-service clause is constantly revised and adjusted to reflect the actual cost of fuel during the billing period, billing under a fixed-rate clause is, as its name suggests, fixed. As Edison sees it, the use of a fixed-rate clause bars billing adjustments after the close of the billing period, thus making the proxy, in effect, virtually immune to post-billing adjustments. Notwithstanding the surface appeal of Edison's argument, we have come, upon reflection, to a different view.

*First.* Edison admits, as it must, that two exceptions exist to what it otherwise broadly asserts to be the inviolate nature of fixed-rate clauses. (1) A utility must, under settled precedent, refund costs that are improperly collected under the utility's fuel adjustment clause. *See Delmarva Power & Light Co.*, 24 F.E.R.C. ¶ 61,199, at 61,461 (1983) (refunds ordered for costs associated with disposal of nuclear fuel); *Electric Cooperatives of Kansas*, 14 F.E.

---

**2.** The "filed rate" doctrine "forbids a regulated entity to charge rates for its service other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981); *see Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). Derived from the filed rate doctrine is the rule against retroactive ratemaking. The latter rule "bars ... the Commission's retroactive substitution of an unreasonably high or low rate with a just and reasonable rate." *City of Piqua v. FERC*, 610 F.2d 950, 954 (D.C.Cir.1979); *see Arkansas Louisiana Gas Co.*, 453 U.S. at 578, 101 S.Ct. at 2930. "It is, of course, a cardinal principle of ratemaking that a utility may not set rates to recoup past losses, nor may the Commission prescribe rates on that principle."

*Nader v. FCC*, 520 F.2d 182, 202 (D.C.Cir.1975). We have previously held that the rule against retroactive ratemaking prevents utilities from collecting revenues to compensate for underrecoveries under a fixed-rate fuel clause. *Public Serv. Co. of New Hampshire v. FERC*, 600 F.2d 944, 956–61 (D.C.Cir.), *cert. denied*, 444 U.S. 990, 100 S.Ct. 520, 62 L.Ed.2d 419 (1979).

Edison's $17.7 million shortfall, the Commission determined, resulted from Edison's changing from a lagging to a current fuel adjustment clause. *City of Vernon v. Southern California Edison Co.*, 31 F.E.R.C. ¶ 61,113, at 61,123, *rehearing denied*, 32 F.E.R.C. ¶ 61,372 (1985). In accordance with the rule against retroactive ratemaking, Edison was not permitted to collect the fuel costs it had underrecovered at the time of the change. *Anaheim v. FERC*, 669 F.2d 799, 807–08 (D.C.Cir.1981).

R.C. ¶ 61,176, at 61,320 (1981) (refunds ordered for costs associated with pollution control devices); *Public Service Co. of New Hampshire*, 1 F.E.R.C. ¶ 63,039, at 65,294 (1977) (refunds ordered for imprudently incurred costs). (2) Edison volunteers, and common sense would suggest, that corrections to the proxy period also may be permissible "when there have been mathematical errors" in calculating the bill.[3] Brief for Petitioners at 24.

The principle that ineluctably emerges from both Commission precedent and Edison's own position in this case is that billings under a fixed-rate clause are not inviolate after all. That is to say, fixed-rate clauses are not completely unlike cost-of-service fuel clauses since under the former, the proxy-period veil, as it were, may be pierced. The line between the two clauses is indeed blurred, as opposed to bright and clear. The question thus becomes whether the Commission, consistent with its statutory mandate and the requirement of reasoned decisionmaking, could properly blur the line in this case so as to require the utility to reopen its proxy periods to flow through a refund. Upon briefly disposing of Edison's indictment that the Commission has been unfaithful to its own decisions, we shall return to this, the bedrock issue in the case.

*Second.* Quite apart from its contention that the Commission has eviscerated fixed-rate clauses, Edison argues that the Commission's decision has departed from prior precedent. Not so. By Edison's own admission, no agency precedent expressly addresses this precise issue. We thus see no need to treat agency precedent that concededly does not squarely control the situation at hand. Analogously to the process of judicially divining Congressional intent, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we are unable to discern any clear, prior Commission statement or position on the precise issue before us. Not only is there a dearth of precedent on this subject, no Commission rule speaks to the question before us. We are in new territory here.[4]

■ *Third.* In the absence of clear precedent, the Commission interpreted Edison's fuel adjustment clause in light of the agency's statutory mandate to ensure that only just and reasonable charges are collected under a FAC. 16 U.S.C. § 824d(a) (1982); *see City of Vernon*, 31 F.E.R.C. ¶ 61,113; *id.*, 32 F.E.R.C. ¶ 61,372; *see also infra* note 5. That standard necessarily endows the Commission with broad latitude. *American Public Power Association v. FPC*, 522 F.2d 142, 146 (D.C.Cir. 1975). Here, the Commission's exercise of its wide discretion was reasoned and reasonable. As we have seen, the agency concluded that permitting Edison to retain supplier refunds amounted to excessive rates being laid at the feet of the utility's wholesale customers. Refusing to allow retention of the refunds makes perfect sense to us, inasmuch as, conceptually, reopening the proxy period to permit flow through of fuel supplier refunds (based on supplier billing mistakes or the like) is no

---

3. Edison maintained on brief that "[c]orrections, if any, are permissible only when there have been mathematical errors or when there has been an inclusion of a non-fuel item." Brief for Petitioner at 24. At oral argument before this court, Edison indicated more specifically as to the former element that billing corrections are made routinely for mathematical errors for which the utility is responsible.

4. We pause to observe that it was not improper for the Commission to resolve this new issue in the adjudicatory setting before it. Administrative agencies enjoy wide latitude, of course, in determining which mode of agency action will be employed in addressing a particular issue.

*See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290–95, 94 S.Ct. 1757, 1769–72, 40 L.Ed.2d 134 (1974). Our discussion in the text responds to Edison's submission that the Commission failed to comply with Section 554(b)(3) of the APA, which requires that a party have notice and an opportunity to present evidence when an agency seeks to change a controlling standard of law through an adjudication. In this case, there was no "controlling standard of law" on the precise issue resolved in the adjudication, and so the adjudication itself provided Edison with full opportunity to litigate all the contested issues. Thus, section 554(b)(3) was fully satisfied. *Cf. Hatch v. FERC*, 654 F.2d 825, 835 (D.C.Cir.1981).

different than reopening the period to correct the utility's own billing mistakes (which Edison admits is permissible). The question eventually reduces to one of judgment, informed by the policy of the statute that Congress has seen fit to enact. We find the agency's judgment, embracing as it does the approach of actual costs, to be fully consistent with the Commission's broad mandate from the Article I branch to assure that all rates are just and reasonable.[5]

We have previously had occasion to say that the Commission's interpretation of fuel adjustment clauses is entitled to considerable deference from the generalist judiciary. *Public Service Co. of New Hampshire v. FERC*, 600 F.2d 944, 954 (D.C.Cir.), *cert. denied*, 444 U.S. 990, 100 S.Ct. 520, 62 L.Ed.2d 419 (1979). We reaffirm that sensible stance today. In our view, the Commission's mandated result, while not the only possible or permissible one, was nonetheless reasonable. It achieves fairness goals that inhere in the concept of "just and reasonable rates." No more is required than a reasoned determination by the agency, consistent with law. We are not at liberty to overturn a Commission interpretation that is "amply supported both factually and legally." *Gulf States Utilities Co. v. FPC*, 518 F.2d 450, 457 (D.C.Cir.1975) (quoting *United Gas Pipeline Co. v. Memphis Light, Gas & Water Division*, 358 U.S. 103, 114, 79 S.Ct. 194, 201, 3 L.Ed.2d 153 (1958)); *see also Ho-*

*lyoke Water Power Co. v. FERC*, 799 F.2d 755, 759 (D.C.Cir.1986).

 Finally, we reject Edison's argument that the Commission abused its discretion in failing to permit the utility to retain the fuel supplier refunds on the basis of balancing the equities. Edison complains, it will be recalled, of its $17.7 million underrecovery in fuel costs, and that, in fairness, it should be permitted to retain the fuel supplier refunds as partial compensation for this enormous shortfall. But upon analysis, this shortfall is a direct consequence of Edison's own decision to switch from a fixed-rate clause to a cost-of-service clause. Equity does not move in favor of one whose own conduct or action has brought upon it misfortune or pecuniary loss. As we have seen, *supra* note 2, under settled principles Edison would not be permitted to collect these underrecoveries directly. It stands to reason that the Commission could properly determine that permitting Edison to collect its underrecoveries indirectly would work the same violation of the Federal Power Act as would be occasioned by direct recovery. Edison has crafted its own clause, and it now must take the bitter with the sweet.

*Denied.*

---

**5.** We observe, incidentally, that the decision's emphasis upon actual cost is not inconsistent with the express terms of Edison's fixed-rate fuel adjustment clause. Edison argues that nothing in the language of the tariff barred Edison from retaining the refunds. Reply Brief at 6. But the argument cuts both ways; nothing in the tariff expressly permits retention, either. That clause states in pertinent part that "[f]uel costs ... shall be the cost of: ... [t]he *actual* identifiable fossil and nuclear fuel costs...."

*See* Reply Brief of Petitioner at Addendum A (emphasis added). If anything, this language looks more in the direction of intervenors' interpretation. However, inasmuch as this factor was not relied upon by the agency in its decision, we simply note it without relying upon it as a basis for affirming the Commission's decision. *See SEC v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 459–60, 87 L.Ed. 626 (1943).