922 F.2d 861
 287 U.S.App.D.C. 333
 CITIES AND VILLAGES OF BANGOR, BARRON, CADOTT, CORNELL,
MEDFORD, RICE LAKE, SPOONER, TREMPEALEAU, WESTBY, AND
WHITEHALL, WISCONSIN; The City of Wakefield, Michigan; and
the Wisconsin Public Power, Inc. System, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Northern States Power Company, et al., Intervenors.
 Nos. 89-1692, 90-1042.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 12, 1990.
Decided Jan. 8, 1991.
 
 George R. Edgar, with whom J. Leroy Thilly was on the brief, for petitioners.
 Katherine Waldbauer, Atty., FERC, with whom William S. Scherman, Gen. Counsel, and Joseph S. Davies, Deputy Sol., were on the brief, for respondent. Timm Abendroth also entered an appearance for respondent.
 Leonard W. Belter and John P. Moore, Jr., were on the brief, for intervenors. Arlene Pianko Groner also entered an appearance, for intervenors.
 Before EDWARDS, D.H. GINSBURG, and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 D.H. GINSBURG, Circuit Judge:
 
 
 1
 Coal supply contracts routinely contain a "take-or-pay" provision, under which the purchaser agrees that if it does not take delivery of a minimum amount of coal during each month or year of the contract term, it will pay the coal supplier part of the price of the coal not taken. In 1986 and 1987, Northern States Power Company (Minnesota) paid approximately $10 million to Westmoreland Resources, Inc., pursuant to invoices for minimum take payments. Because Northern (Minnesota) participates in a system-wide accounting pool with its subsidiary, Northern States Power Company (Wisconsin), a portion of the $10 million was allocated to Northern (Wisconsin). The subsidiary, in turn, passed its share of the minimum take payments directly to its customers, using the fuel adjustment clause filed with its rate schedule. (A fuel adjustment clause allows a utility to change its rates to reflect the current cost of fuel without continually having to file for rate increases and decreases. Public Serv. Co. v. FERC, 600 F.2d 944, 947 (D.C.Cir.1979).)
 
 
 2
 Northern (Minnesota) and Northern (Wisconsin) [collectively Northern] asked the FERC for a declaratory order approving this use of the fuel adjustment clause. In the alternative, Northern asked the FERC retroactively to waive the fuel adjustment clause rules and so to ratify the prior pass-through of minimum take payments. The petitioners here, wholesale customers of Northern (Wisconsin), intervened and claimed that take-or-pay payments do not qualify for fuel clause treatment. They also claimed that two specific disbursements totaling $4.2 million were part of a contract buydown and thus ineligible for fuel clause treatment in any event.
 
 
 3
 The FERC held in general that minimum take payments could be passed through the fuel clause, and that the challenged expenditures in particular were minimum take payments. 48 F.E.R.C. p 61,012, reh'g denied and order to show cause, 48 F.E.R.C. p 61,313, order on response to show cause, 49 F.E.R.C. p 61,291 (1989), reh'g denied, 50 F.E.R.C. p 61,065 (1990). We deny the customers' petition for review.
 
 I. ANALYSIS
 
 4
 Our inquiry into the FERC's interpretation of its fuel clause regulation is narrow. We ask only whether the Commission's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Michigan Consol. Gas Co. v. FERC, 883 F.2d 117, 120 (D.C.Cir.1989) (MichCon ) (quoting 5 U.S.C. Sec. 706(2)(A)). Because it "rests on matters peculiarly within the agency's area of expertise," we must defer to the FERC's construction of the fuel clause regulation unless it is "plainly erroneous or inconsistent with the regulation" itself. Transcanada Pipelines Ltd. v. FERC, 878 F.2d 401, 411 (D.C.Cir.1989). Cf. Southern Calif. Edison Co. v. FERC, 805 F.2d 1068, 1072 (D.C.Cir.1986) (considerable deference given to FERC interpretation of individual fuel adjustment clauses). Otherwise we will affirm the Commission as long as it shows that it considered the relevant factors and provided a satisfactory explanation for its action. MichCon, 883 F.2d at 120-21.
 
 
 5
 In an effort to engage the court in closer scrutiny, the petitioners imply that the decision under review departs from Commission precedent. The FERC had never before considered the fuel clause treatment of a minimum take payment, however. The petitioners also argue that the FERC departed from its past practice of strictly construing the requirements for passing an expenditure through a fuel adjustment clause. This argument is no more than an expression of displeasure with the result. See Illinois Power Co., 52 F.E.R.C. p 61,162, at 61,622-23 (1990) (reaffirming strict construction of fuel clause). The FERC simply did not believe that its principle of strict construction compelled a particular result in this case, 48 F.E.R.C. at 62,044 n. 6, and neither do we.
 
 
 6
 The FERC evaluates a fuel clause, or a use thereof, to ensure that each expenditure passed through to customers (1) reflects "the cost of ... fuel consumed," and (2) "include[s] no items other than those listed in Account 151 of the ... Uniform System of Accounts for Public Utilities and Licensees." 18 C.F.R. Sec. 35.14(a)(2)(i), (a)(6). The items listed in Account 151 are:
 
 
 7
 1. Invoice price of fuel less any cash or other discounts.
 
 
 8
 2. Freight, switching, demurrage and other transportation charges, not including, however, any charges for unloading from the shipping medium.
 
 
 9
 3. Excise taxes, purchasing agents' commissions, insurance and other expenses directly assignable to cost of fuel.
 
 
 10
 4. Operating, maintenance and depreciation expenses and ad valorem taxes on utility-owned transportation equipment used to transport fuel from the point of acquisition to the unloading point.
 
 
 11
 5. Lease or rental costs of transportation equipment used to transport fuel from the point of acquisition to the unloading point.
 
 
 12
 18 C.F.R. Sec. 101, Account 151. The Commission often resolves in tandem the questions whether an expenditure is a "cost of ... fuel consumed" and also an "item[ ] ... listed in Account 151," as for example in rejecting a utility's claim that a particular expenditure is "directly assignable" to the cost of fuel under Account 151(3). See, e.g., Indianapolis Power & Light Co., 48 F.E.R.C. p 61,040 (1989); Minnesota Power & Light Co., 39 F.E.R.C. p 61,192 (1987), aff'd in relevant part, 852 F.2d 1070 (8th Cir.1988). Here the agency treated the issues sequentially--which is an aid to clarity--and so, therefore, do we.
 
 A. The Cost of Fuel Consumed
 
 13
 The FERC found that a minimum take payment made pursuant to a coal supply contract constitutes part of the cost of fuel consumed. The Commission explained that a minimum take payment is an integral element of a utility's ongoing fuel procurement process. A payment made pursuant to the minimum take commitment may not itself put coal into the utility's boiler, but the underlying commitment assures the utility of a reliable fuel supply at the contract price.
 
 
 14
 Accordingly, liability under a take-or-pay arrangement like the one involved here is a routine cost of obtaining coal. As such, it is like the reclamation expense afforded fuel clause treatment in Kansas Municipal & Cooperative Electric Systems, 16 F.E.R.C. p 61,227 (1981), the only prior case in which the FERC allowed a utility to pass through the fuel clause an expense not patently within the terms of Account 151. In Kansas Municipal, the coal supplier billed the utility for the cost of surface reclamation required by statute. Although the reclamation work did not itself provide fuel to the utility, it was an unavoidable cost of mining and thus of obtaining a supply of coal; the FERC therefore found it to be a "cost of ... fuel consumed." See also Southern Calif. Edison, 3 F.E.R.C. p 61,075, at 61,210-11 (declaring that minimum take payments under a fuel transportation contract might be passed through the fuel adjustment clause, but that the payments in that case were insufficiently documented to justify such treatment).
 
 
 15
 A minimum take payment is clearly different from most of the types of expense that the FERC has determined are not part of the cost of fuel consumed. A minimum take payment is inseparable from the contractual price of coal. Those other expenses generally involved either the purchase of a non-fuel material, Electric Coops. of Kansas, 14 F.E.R.C. p 61,176 (1981) (limestone used for pollution control), or payment for a non-fuel service, Minnesota Power & Light Co., 39 F.E.R.C. p 61,192 (1987) (attorney's fees and litigation expenses). See also Indianapolis Power & Light Co., 48 F.E.R.C. p 61,040 (1989) (audit and legal consulting fees); Kansas City Power & Light Co., 42 F.E.R.C. p 61,249 (1988) (equity interest in railroad cars).
 
 
 16
 The only case in need of further explanation involved a payment made in order to buy out or buy down a contractual liability that had not yet matured. Kentucky Utils. Co., 45 F.E.R.C. p 61,409 (1988). The FERC there said that "buyout costs are the very antithesis of the cost of fuel consumed," as they are "payments ... in consideration for not purchasing fuel required by contract." 45 F.E.R.C. at 62,292. The petitioners argue with some force that a minimum take payment is likewise occasioned by the buyer's "not purchasing fuel required by contract."
 
 
 17
 The Commission explains that, unlike a buyout or a buydown, a minimum take payment does not amend or cancel a contractual term, but merely implements the fuel supply contract. 48 F.E.R.C. at 61,086 n. 17. A utility with a typical array of coal supply contracts may have to make minimum take payments "repeatedly ... in the ordinary course of ... business as it continually reevaluates its fuel needs." Id. at 61,086. A contract buyout or buydown, in contrast, is a "one-time," "extraordinary" decision that fundamentally alters an existing fuel supply arrangement. Id. Thus, the Commission has adequately explained why minimum take payments, but not buyout or buydown costs, are part of the cost of fuel consumed.
 
 B. The Invoice Price of Fuel
 
 18
 Not every expense that may appear on an invoice rendered by a coal supplier to a utility is included within the "invoice price of fuel" listed in Account 151. See Southern Calif. Edison Co., 3 F.E.R.C. p 61,075, at 61,210 (1977) (excluding financing costs from fuel clause treatment). The FERC held that an invoiced minimum take payment is part of the "invoice price of fuel," however.
 
 
 19
 As we have seen, the FERC reasonably assigns minimum take payments to the cost of fuel consumed, and a minimum take payment is functionally inseparable from the unit cost of fuel. Without the revenue cushion provided by a minimum take clause, a supplier would have to charge more per unit of coal actually taken. Thus, the nominal unit price of the cost of fuel consumed is distorted by the offset for the take-or-pay provision. By including minimum take payments in the "invoice price of fuel," the FERC merely avoids importing that distortion into its regulation governing the use of fuel cost adjustment clauses.
 
 
 20
 As the petitioners point out, the Commission recently stated that costs may be recovered through the fuel cost adjustment clause "only when [they] are properly classified under Account 151." Kansas City Power & Light Co., 42 F.E.R.C. at 61,809. Yet in the present case, the FERC ruled that a minimum take payment may be passed through the fuel clause even though it is properly recorded in Account 501 rather than Account 151. In context, the FERC's present decision is not arbitrary or capricious, but sensible. First, we note that Kansas City Power does not preclude an expense from being "classified" under one account and yet properly "recorded" in another for a different regulatory purpose. Second, we do not think that the Commission should be faulted for following the literal meaning of its fuel clause regulation, which simply requires that an expenditure be for one of the "items ... listed in Account 151," without regard to whether it is also recorded in that account. Most important, the Commission's rules specifically link Accounts 151 and 501; items first recorded in Account 151 (Fuel Stock) are cleared through Account 501 when fuel is actually used. 18 C.F.R. Sec. 101, Account 501(B). See 48 F.E.R.C. at 62,044 n. 6. As a minimum take payment is "used" at the moment the payment is made, the FERC reasonably requires the payment to be booked directly to Account 501 without first making a momentary stopover in Account 151. This accounting treatment does nothing to call into doubt the Commission's judgment that a minimum take payment is part of the invoice price of fuel listed in Account 151.
 
 C. Application of an Ongoing Benefits Test
 
 21
 In Kentucky Utilities, the FERC waived the normal two-part test for fuel clause treatment and allowed the utility to pass through buyout costs, but only to the extent that fuel cost savings were actually realized. 45 F.E.R.C. at 62,292-93. The petitioners here urge the application of a similar "ongoing benefits test" to minimum take payments. The FERC points out that the ongoing benefits test is not to be found in the fuel clause regulations, but is imposed upon buyout costs solely as a condition of waiving the fuel clause requirements for those expenditures. 48 F.E.R.C. at 62,044-45. Because minimum take payments qualify for fuel clause treatment without need of a waiver, further qualification under the ongoing benefits test is not necessary. Id. If a utility unwisely commits itself to take coal in an excessive amount, or at an exorbitant price, fuel clause treatment does not preclude a customer from challenging a minimum take provision as imprudent. Id. at 62,044 n. 8. See Southern Calif. Edison Co. v. FERC, 805 F.2d at 1070-71.
 
 II. CONCLUSION
 
 22
 The petitioners also argue that the FERC erred in holding that two payments that Northern made to Westmoreland were minimum take payments rather than payments in consideration of a buydown of its long-term obligation to take coal under the contract. The FERC's determination is supported by the clear language of the contract, the affidavit of a Northern executive, and Westmoreland's invoices. Northern's original waiver application, and its responses to data requests made by the FERC staff in a related ratemaking proceeding, might lead a different finder of fact to a different conclusion. The weighing of the evidence is the province of the agency, however, and not of this court. We affirm the Commission's finding as supported by substantial evidence. See 16 U.S.C. Sec. 825l (b).
 
 
 23
 Because the FERC adequately explained its decision to allow Northern to recover minimum take payments through the fuel adjustment clause, and drew reasoned distinctions between minimum take payments and the other expenses for which it had refused fuel clause treatment in the past, the petition for review is
 
 
 24
 Denied.