Robert SMITH, Jr., Plaintiff-Appellant,

v.

Warden James ROSE, et al.,
Defendants-Appellees.

No. 83–5419.

United States Court of Appeals,
Sixth Circuit.

Decided April 19, 1985.

Argued Jan. 15, 1985.

Nathaniel R. Jones, Circuit Judge, filed opinion concurring in part and dissenting in part.

Robert Smith, Jr., pro se.

Harold D. Vick (argued), Newport, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. of Tenn., Nashville, Tenn., Ann Lacy Johns, David Himmelreich (argued), for defendants-appellees.

Before LIVELY, Chief Judge, MARTIN and JONES, Circuit Judges.

LIVELY, Chief Judge.

The plaintiff appeals from summary judgment in favor of all the defendants in this civil rights action. At the time he filed the complaint, plaintiff was serving a life sentence at Tennessee State Prison in Nashville. The defendants are the warden and several officers at the prison.

In addition to introductory material and a conclusion the *pro se* complaint contains forty-four numbered paragraphs. Giving it the liberal reading required by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the complaint made two distinct claims of deprivation of constitutional rights. First, plaintiff charged that the warden ordered him placed in adminis-

trative segregation without cause and that he suffered hardships while so confined. Second, plaintiff charged that the defendants took his personal property, refused to permit him to retrieve it and ultimately disposed of it. After considering the complaint, the defendants' motion to dismiss or to grant summary judgment supported by affidavits, and the plaintiff's response, the district court concluded that neither allegation stated a claim under 42 U.S.C. § 1983 and that there was "no state of facts upon which plaintiff could conceivably prevail." This court appointed counsel for plaintiff on appeal.

## I.

### A.

In December 1981 plaintiff was involved in a work-release program which permitted him to work part time in a restaurant and take classes at a state technical institute. On December 26, 1981 plaintiff was arrested at work by Nashville Metro police officers and charged with aggravated rape, aggravated kidnapping, armed robbery and assault with intent to commit murder. These charges stemmed from an attack on a woman the previous day in the area of his workplace. When plaintiff was returned to Tennessee State Prison on December 28 the defendant Warden Rose placed him in administrative segregation and recommended that he be confined there "for the security of the institution." A disciplinary board hearing was held the following day to review the warden's recommendation. Plaintiff waived his right to a 24-hour advance notice of the hearing, attended the hearing represented by a resident advisor and made a written statement. The disciplinary board concurred in the warden's recommendation and plaintiff was kept in administrative segregation until sometime in February 1982.

Following plaintiff's arrest his personal effects were returned to Tennessee State Prison from the Nashville Community Service Center where plaintiff had been staying while on work release. Metro police officers were permitted to examine the property for evidence related either to the crimes with which plaintiff was charged or to an unrelated murder for which he was being investigated. While the property was being held for this purpose plaintiff was permitted to take personal items not related to the investigation. According to the complaint, on or about April 27, 1982 a prison officer told plaintiff that the "hold" had been released and that he had until the following week-end to remove the property from a prison storage room. Plaintiff charges that he talked with Rose and that Rose told him he would extend the time for removal of the property an additional 30 days from April 27th. However, when plaintiff advised the officer in charge of the property room that his time for retrieving the property had been extended, the officer told him that the property already had been donated to a charity. Under prison regulations plaintiff was entitled to a period of 30 days in which to remove property from the property room.

### B.

In the "conclusion" of his complaint plaintiff charged that the defendants knew their actions were wrong and "[t]he plaintiff feels that the officials openly discriminated against the plaintiff because no other person was placed in segregation like the plaintiff was." With respect to the deprivation of his property, plaintiff charged in paragraph 44 that the defendants refused to let the plaintiff have the property picked up and disposed of. "There was no excuse for this action by the defendants and the plaintiff feels that this was done through spite and a conspiracy, because the defendant and his subordenates, [sic] and the Metro police knew that there was evidence in this property to clear the plaintiff of the charges that were brought back up."

Correctional officers who worked in the property room stated in affidavits that plaintiff was allowed to take items from his boxes of property on several occasions, that the Metro police officers went through the property early in January 1982 and that they told plaintiff during the second week

in January that the property had been released and that he had 30 days to arrange for its removal. According to the affidavits, plaintiff stated that he would have someone pick it up. The property was donated to "Goodwill" on April 22, 1982.

Plaintiff's response to the motion for summary judgment reiterated the claims of the complaint and charged that the defendants' affidavits contained untruths. He attached affidavits of three correctional officers who stated that they escorted plaintiff to the property room in January and February 1982 while he was confined in segregation, but that he was never permitted to take anything but some shirts and underclothes. None of the affidavits addressed the facts surrounding the disposal of the property. They appear to be intended to support plaintiff's claim that he was denied items of a personal nature while he was in administrative segregation.

## II.

### A.

█ Though he admits the prescribed processes were followed in sending him to administrative segregation, plaintiff argues without specificity that the hearing was a "hollow show." The procedures followed in this case satisfied the requirements set forth by this court in *Bills v. Henderson*, 631 F.2d 1287 (6th Cir.1980). The plaintiff appears to contend that the prison authorities could not place him in administrative segregation on the basis of state charges which had not resulted in a conviction. He also makes the argument that even if he was properly sent to segregation when first returned to Tennessee State Prison, he should have been released when the charges based on the arrest warrant were dismissed. However, the record is undisputed that the original charges were "nolle prossed" only because the victim of the rape and attempted murder was too ill to testify at a preliminary hearing and that the prosecution was never dropped. The matter was presented to a grand jury which indicted plaintiff on the identical charges for which he was originally arrested.

█ Chief among the responsibilities of prison officials is security of the prison, and they must have broad discretion in carrying out this responsibility. *Bell v. Wolfish*, 441 U.S. 520, 546–48, 99 S.Ct. 1861, 1877–79, 60 L.Ed.2d 447 (1979). Involuntary confinement in administrative segregation may be ordered for the general purpose of maintaining institutional security when no specific rule infraction is charged. *Bills v. Henderson*, 631 F.2d at 1295–96. This limitation on a prisoner's already diminished liberty interest is part of the required "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The immediate return to the general prison population of an inmate who is charged with serious crimes while on work release could reasonably be perceived as likely to create serious institutional problems. It was within the warden's discretion to place the plaintiff in administrative segregation upon his return to the prison and then to convene the disciplinary board the next day. Not only was plaintiff charged with serious offenses, he was also under investigation in connection with a homicide. So long as the prison officials accorded plaintiff his procedural due process rights, he suffered no constitutional deprivation by being placed in administrative segregation.

### B.

Plaintiff does not contend that the initial seizure of his personal property was wrongful. The gravamen of his complaint is that, though he tried to retrieve his property on a number of occasions, the defendants did not return it to him, but gave it to a charity. The district court held that this claim was foreclosed by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In that decision the Supreme Court held that a state prisoner's claim that officials had negligently lost his

property did not sufficiently allege a violation of the Fourteenth Amendment due process clause. *Id.* at 537, 101 S.Ct. at 1914. The deprivation in *Parratt* did not result from "some established state procedure," *id.* at 543, 101 S.Ct. at 1917, rather, it occurred because of a random act of carelessness. Furthermore, the state provided a remedy for redress of the deprivation and, even though this remedy involved a postdeprivation hearing, it was sufficient to satisfy due process requirements.

Plaintiff argues that he charged the defendants with intentional, not negligent, actions which deprived him of property, and therefore *Parratt* does not control. However, this argument is unavailing in view of the recent decision in *Hudson v. Palmer,* — U.S. ——, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). In *Hudson* the Supreme Court held that the reasoning of *Parratt* applies to intentional deprivations of property as well as to negligent ones.

■ Plaintiff next contends that even if *Parratt* applies to an intentional deprivation, his § 1983 claim survives because Tennessee has no postdeprivation remedy for intentional acts of state officials. He relies on Tennessee Code Annotated (T.C.A.) § 9–8–207 which provides for the hearing and determination by a state board of claims of "claims against the state for injuries or damages caused by the acts or omissions of any officers, members or employees of the state...." Plaintiff argues that T.C.A. § 9–8–207 permits the board of claims to hear and determine only claims based on negligence and that he consistently characterized the defendants' acts as "intentional, deliberate and willful" in his complaint. This court recently held that T.C.A. § 9–8–207 provides "adequate procedures to assure the return of items either negligently or intentionally converted...." *Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir.1985). Plaintiff argues that § 9–8–207 does not provide him a remedy because it excludes claims based on "actual fraud,

malice or corruption of the officer, member or employee." However, plaintiff pled no facts and developed none in response to the motion for summary judgment upon which a finding of actual fraud, malice or corruption could be based. *Brooks v. Dutton* would have no meaning if every claim of intentional misconduct were equated with actual fraud, malice or corruption. The conclusory claims of plaintiff's complaint provided no basis for holding that he would be without a remedy under § 9–8–207.[1]

■ We conclude that this case is within the rule of *Parratt v. Taylor.* Though plaintiff could not recover the property, he had an adequate remedy in an action before the board of claims for its value. Viewing the complaint and the materials filed by plaintiff in response to the motion for summary judgment most strongly in plaintiff's favor, he was deprived of his property because the defendants, either negligently or intentionally, failed to advise him in a timely manner that the "hold" on his property had been released. The conclusory statement in the complaint that plaintiff "feels" that his property was disposed of through spite and conspiracy is not supported by factual statements and is not sufficient to state a claim for relief under 42 U.S.C. § 1983. In *Place v. Shepherd,* 446 F.2d 1239, 1244 (1971), we dealt with the pleading requirements under § 1983 as follows:

> We are unable to discern allegations of fact in the foregoing which would justify the broad conclusions asserted. A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions.

This language would have supported a dismissal pursuant to the Rule 12(b)(6) motion of the defendants. However, the district court considered the entire record and granted summary judgment.

■ If every factual claim made by the plaintiff in this case is accepted as true, the

---

1. Section 9–8–207 was repealed effective January 1, 1985. However, it controls this case where suit was filed in 1982 and the judgment

of the district court was entered in 1983. The new statutory scheme is not before us.

defendants were entitled to judgment as a matter of law. Therefore summary judgment was properly entered in their favor. Rule 56(c), Fed.R.Civ.P. That plaintiff "felt" the defendants acted out of spite and pursuant to an agreement was a conclusion only. The plaintiff was able to secure affidavits of three prison officers concerning his efforts to obtain a return of his property while he was still in administrative segregation, but produced no evidence to support his conclusory allegations of spite and conspiracy. At most, the materials produced by the plaintiff show a failure to follow prison rules by notifying him of the availability of his property for removal from the storage room in sufficient time for him to arrange its removal. This was the very type of act which *Parratt v. Taylor* disallows as the basis of a § 1983 action where the state provides a postdeprivation remedy.

The judgment of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

Although I agree that administrative segregation did not violate Smith's due process rights, I dissent from the majority's determination that Smith's claim for deprivation of property fails, as a matter of law, because an adequate state remedy was available.

It deserves emphasis that proper analysis begins from the dual premises that we should liberally construe Smith's complaint, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and that we must view all evidence supporting his factual allegations in the light most favorable to Smith on this review of a grant of summary judgment to the defendants. Smith not only alleges that prison officials negligently or intentionally deprived him of property, but also alleges that he filed a state law tort suit against the defendants for deprivation of property. The record reveals that Smith's pro se suit in state court was dismissed several months before he filed this action under 42 U.S.C. § 1983.

Smith alleges that his state suit was dismissed for lack of prosecution because prison officials failed to transport him to Tennessee General Sessions Court on the hearing date. The majority's resort to the Tennessee Code does not in this context establish that an adequate state remedy was available to Smith. Viewing the evidence in the light most favorable to him, a genuine question of material fact remains on this issue.

I believe that whether an adequate state remedy is available must be considered in the context of each case, as a question of fact. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), stand for the proposition that an adequate state postdeprivation remedy will satisfy procedural due process when a state prisoner alleges negligent or intentional deprivation of property by a person acting under color of state law but not in a manner authorized by established procedure. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), established that the federal remedy under § 1983 is supplemental to state remedies, which "need not be first sought and refused" *Id.* at 183, 81 S.Ct. at 482. The Court arrived at this conclusion by reviewing the legislative history of the Act and determining that § 1983 has three distinctive purposes: first, to override certain objectionable state laws; second, to provide a remedy when state law is inadequate; and third, the broader purpose to provide a federal remedy where a state remedy, although adequate in theory, is not available in practice. *Id.* at 173–74, 81 S.Ct. at 476–77. *Parratt* did not review the legislative history of § 1983 and reject or revise the Court's declaration of the purposes of the Act as set forth in *Monroe;* rather, *Parratt* operates within the tradition of *Monroe* and provides a gloss on Monroe's statement that a § 1983 action may be brought when a state remedy is adequate in theory but not in practice. *Parratt* establishes, for its particular factual setting, the characteristics of a state remedy that is adequate in practice. Under *Parratt,* the

state remedy must be available in a meaningful manner and at a meaningful time after the initial dispossession of the prisoner's property. *Parratt*, 451 U.S. at 540, 101 S.Ct. at 1915. If so, no constitutional deprivation has occurred and a federal forum is unnecessary. *Id.* at 543, 101 S.Ct. at 1917. *Parratt* has particularized the analysis of *Monroe*, rather than undermined *Monroe's* holding that the § 1983 remedy is supplemental to state remedies.

The determination of whether a state remedy is actually, not merely theoretically, available in a meaningful manner and at a meaningful time necessarily requires consideration of the circumstances of each case. For example, if the value of the seized property diminishes over time, or if its seizure places the property in jeopardy of destruction, then state provision of a remedy within a "meaningful time" may require a greater dispatch than where the property has been destroyed at the time of the seizure and only money damages, rather than restitution, are available. This Court has noted, in another due process context, that "determining a reasonable time period defies easy exegesis." *Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 564 (6th Cir.1983).

Smith's complaint alleges that he was denied what he believed was an adequate state tort remedy by the abusive behavior of state officials who prevented him from pursuing his claim. This is the sort of abuse § 1983 was intended to remedy; if Smith's allegation is true, his state remedy was only theoretically available.

The majority ignores these allegations and simply looks to the Tennessee Code to determine whether an adequate remedy is available. The majority ultimately relies upon this Court's opinion in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983). In *Vicory*, the Court properly required the plaintiff to plead and prove that state remedies were "inadequate in theory or practice." *Id.* at 1065. This portion of the *Vicory* holding is entirely in keeping with *Monroe* and *Parratt*. The Court went on, however, to require demonstration of a "systematic problem with the state's corrective process." *Id.* While such a showing will satisfy *Monroe* and *Parratt*, a deprivation of due process is no less a constitutional violation for being aberrant rather than systematic.

It appears that the Court's concern in *Vicory* was not remedying due process violations, but remedying the case load of federal courts overburdened with prisoners' § 1983 claims. *See Vicory*, 721 F.2d at 1065 n. 4. The majority today holds that Smith had an adequate state remedy on the ground that in *Brooks v. Dutton*, 751 F.2d 197 (6th Cir.1985), another panel of this Court examined the Tennessee Code and found that it provided "adequate procedures." *Id.* at 199. While this is a relevant threshold finding, it does not properly end the matter. Nor will the question be finally resolved in this Circuit once we have examined the statute books of Kentucky, Ohio and Michigan. *Parratt* and *Monroe* require not theoretical but actual state remedies for individual persons who have been deprived of property under color of state law. These authorities mandate examination of the circumstances of each case.

Not all prisoner § 1983 cases involve hobby kits. Smith alleges that the clothes that the defendants did not return to him would have provided exculpatory evidence in later proceedings on the rape and assault charges. This allegation is more than plausible; the Nashville Metropolitan Police examined the same belongings for inculpatory evidence.

When I examine all of the circumstances of Smith's case and view the evidence in the light most favorable to him, I am not convinced that summary judgment on Smith's claim of property deprivation was proper. I respectfully dissent because I believe reversal in part is appropriate.