**MINNESOTA POWER & LIGHT COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 87–2230.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1988.

Decided Aug. 1, 1988.

**1071**

BRIGHT, Senior Circuit Judge.

Minnesota Power & Light Company (MP &L) appeals the Federal Energy Regulatory Commission (FERC) decision preventing MP&L from passing certain fuel-related expenses onto its wholesale customers through its fuel adjustment clause (FAC). MP&L asserts the FERC erred in: (1) prohibiting MP&L from including the expenses in its computation of the FAC; (2) not waiving the FERC regulations and allowing MP&L to include the expenses in its FAC. While we believe that FERC acted properly under the circumstances, we remand for further consideration of waiver for reasons stated in the opinion.

## I. BACKGROUND

MP&L imported coal from Montana subject to a state severance tax. MP&L, along with other utilities, brought an unsuccessful suit challenging the constitutionality of the tax. MP&L's share of the attorney's fees amounted to $234,282.00.

MP&L contracted with Burlington Northern for train transportation of the coal at an advantageous price, but Burlington Northern sought an increase in the coal tariff rate by filing with the ICC. MP&L challenged the rate increase before the ICC which ultimately held for MP&L, entitling it to a $7.6 million refund.[1] MP&L's attorney's fees for the Burlington Northern litigation amounted to $689,792.00 and $22,688.00 in administrative and general expenses related to the BN tariff increase.

MP&L passed on the savings resulting from the BN litigation, less expenses including both attorney's fees and the administrative and general expenses, to its wholesale customers through the FAC. 18 C.F.R. § 35.14 (1987) authorizes the fuel adjustment clauses. An FAC is a device allowing a utility to automatically pass

John McGrane, Washington, D.C., New York City, for petitioner.

Hanford O'Hara, F.E.R.C., Washington, D.C., for respondent.

Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* Senior District Judge.

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. In addition to attempting to increase MP&L's coal tariff rate, Burlington Northern attempted to increase MP&L's unit train freight rate. MP &L sought and received a temporary restraining order and a preliminary injunction to pre-

vent the increase from becoming effective. The parties reached a settlement under which the settlement rates were made retroactive to January 1984 and, as a result, MP&L avoided in excess of $45 million of fuel cost increases during the 1979–1983 audit period. Additionally, MP&L realized a $12 million annual savings in future fuel transportation costs.

onto its customers the increase or decrease cost of fuel without filing a new formal rate change each time the price of fuel fluctuates. Subsection 6 of 18 C.F.R. § 35.14 limits the type of costs or expenses related to fossil fuel includable in the FAC, to those specifically in "Account 151 of the Commission's Uniform System of Accounts for Public Utilities and Licensees." 18 C.F.R. § 35.14(a)(6) (1987). Account 151(3) provides, *inter alia,* "[e]xcise taxes, purchasing agents' commissions, insurance and other expenses directly assignable to cost of fuel" may be included in the FAC.[2] 18 C.F.R. sub. ch. c, part 101, Acct. 151(3) (1987). MP&L relied on this clause to pass the attorney's fees and litigation-related expenses to its customers.

The FERC disagreed determining that these expenses were properly accountable in other accounts, and that the FERC would not waive strict compliance with the rules in this case because a waiver would detract from the need to strictly observe the accounting under FAC's and Account 151. *See Minnesota Power & Light Co.,* FERC Doc. No. FA84–15–000, 39 F.E.R.C. (CCH) ¶ 61,192 (May 21, 1987) (Order on accounting principles).

This appeal followed.

## II. DISCUSSION

### A. FERC Interpretation

■ MP&L contends that attorney's fees and expenses reasonably incurred to decrease company and customer fuel costs are directly assignable to cost of fuel and, therefore, should be accounted for in Account 151 and passed to customers through the FAC. MP&L argues that if excise taxes incurred in the purchase of fuel are "directly assignable to cost of fuel" and properly includable in Account 151, then expenses incurred in an effort to reduce such excise taxes must likewise be directly assignable and thus includable in Account 151. The same can be said of freight and transportation charges, and the expense incurred in reducing these charges.

While MP&L's argument has some logical appeal, we must accord great deference to the FERC's interpretation of its own regulation and we will not overturn the decision unless it is arbitrary and capricious. *See Moore v. Custis,* 736 F.2d 1260, 1262 (8th Cir.1984). Applying this standard, we uphold FERC's interpretation of the statute.

The FERC has previously and consistently construed the "other expenses directly assignable" language in a restrictive manner. The FERC denied FAC treatment for limestone (a pollution control agent used in the process of high sulfur coal),[3] operating and maintenance expenses, depreciation and property taxes on oil storage tanks, finance charges, exploration and development costs,[4] and deferred fuel expenses.[5] As the Commission points out, all these expenses, while related to fuel and properly recoverable through the rate making process if prudently incurred, are not mentioned in Account 151 and therefore not

**2. 151 · Fuel stock (Major only).**
This account shall include the book cost of fuel on hand.

*Items*

1. Invoice price of fuel less any cash or other discounts.

2. Freight, switching, demurrage and other transportation charges, not including, however, any charges for unloading from the shipping medium.

3. Excise taxes, purchasing agents' commissions, insurance and other expenses directly assignable to cost of fuel.

4. Operating, maintenance and depreciation expenses and ad valorem taxes on utility-owned transportation equipment used to transport fuel from the point of acquisition to the unloading point.

5. Lease or rental costs of transportation equipment used to transport fuel from the point of acquisition to the unloading point. 18 C.F.R. sub. ch. c, part 101, Acct. 151 (1987).

**3.** *Electric Coop. of Kan.,* FERC Doc. No. EL81–2–000, 14 F.E.R.C. (CCH) ¶ 61,176 (Feb. 26, 1981).

**4.** *Southern Cal. Edison Co.,* FERC Doc. No. E–8570, 3 F.E.R.C. (CCH) ¶ 63,001 (July 20, 1976), *aff'd,* 3 F.E.R.C. (CCH) ¶ 61,075 (Apr. 26, 1978).

**5.** *Public Service Co. of N.H.,* FPC Doc. No. ER76–285, 57 F.P.C. 1754 (Mar. 21, 1977), *aff'd sub nom. Public Service Co. of N.H. v. FERC,* 600 F.2d 944 (D.C.Cir.), *cert. denied,* 444 U.S. 990, 100 S.Ct. 520, 62 L.Ed.2d 419 (1979).

properly assigned to that account according to § 35.14(a)(6).

Attorney's fees and administrative and general expenses, which are also not mentioned in Account 151, cannot be deemed similar to those costs which Account 151 delineates as includable in the FAC. Indeed, other regulations specifically provide for inclusion of attorney's fees and administrative and general expenses. Thus, we reject the challenge to FERC's construction of Account 151.

### B.   Waiver

■ MP&L asserts that, even if the FERC correctly interprets Account 151, the FERC should have waived retroactive application of its interpretation. For MP&L to succeed with its argument, it "must show that the agency acted arbitrarily by failing to give 'meaningful consideration' to the application." *United Gas Pipe Line Co. v. FERC,* 707 F.2d 1507, 1511 (D.C.Cir. 1983).

The FERC's reason for denying the requested waiver is as follows:

> When a staff audit uncovers an item improperly accounted for in Account 151, we cannot, even if the expense is prudently incurred, grant a waiver and allow the expense to be recovered in the fuel adjustment clause, and at the same time expect utilities to respect our regulations by strictly interpreting Account 151. Therefore to assure that in the future only proper expenses are accounted for in Account 151 and thus recovered in the fuel adjustment clause, we are denying MP&L's request for a waiver of our fuel clause regulations.

*Minnesota Power & Light Co.,* 39 F.E.R.C. (CCH) ¶ 61,192 at 5.

We believe that the FERC's desire for strict compliance is a legitimate and necessary goal and we recognize that waiver of the regulation by the FERC in this case would have weakened the force of the agency opinion.

Nevertheless, MP&L presents a logical and reasonable good faith, albeit incorrect, argument for inclusion of the fees and expenses in Account 151. Indeed, without a waiver MP&L will be denied the ability to recover the fees and expenses incurred and which resulted in saving MP&L ratepayers millions of dollars in fuel expenses.[6] Thus, while the benefits of the litigation flow to the ratepayer, the costs are placed on the shareholders. While the inclusion of legal expenses which are directly assignable to cost of fuel in the FAC may have been a question of first impression before the Commission, the FERC has previously waived its regulations in order to recognize the importance of matching benefits with cost responsibility.[7]

In recent years, when a utility included certain fuel-related costs in its wholesale fuel adjustment clause without express approval, the Commission granted a waiver or recognized that it would be inappropriate to require refunds where the costs were legitimate costs which a utility was otherwise entitled to recover through its wholesale rates.[8]

We have already affirmed the FERC's decision on the merits of its regulation. Affirming the FERC's decision, we think, will assure that in the future only proper expenses will be included in Account 151.

Yet, the inequity remains of requiring the shareholders to bear the burden of expenses to obtain a refund benefiting the wholesale customers of MP&L.

---

**6.** As a general principle, the fees and expenses would normally be recovered through a formal rate making procedure. However, the time for making a formal rate making procedure which could include these fees and expenses has passed.

**7.** *See Pennsylvania Power & Light Co.,* FERC Doc. Nos. ER82–493–000, ER82–494–000, 23 F.E.R.C. (CCH) ¶ 61,395 (June 22, 1983); *see also* FERC Order No. 144–A, FERC Statutes and Regulations ¶ 30,340 (1982); FERC Order No. 144, FERC Statutes and Regulations ¶ 30,254

(1981); Accounting Principles Board Statement No. 4, ¶ 147.

**8.** *Iowa–Illinois Gas & Elec. Co.,* FERC Doc. No. FA84–46–001, 39 F.E.R.C. (CCH) ¶ 61,055 (Apr. 24, 1987); *Connecticut Light & Power Co.,* FERC Doc. Nos. ER86–39–000, ER85–720–001, 33 F.E. R.C. (CCH) ¶ 61,403 (Dec. 20, 1985); *Pennsylvania Power & Light Co.,* FERC Doc. Nos. ER82–493–000, ER82–494–000, 23 F.E.R.C. (CCH) ¶ 61,395 (June 22, 1983); *Kansas Mun. & Coop. Elec. Sys.,* FERC Doc. No. EL81–11–000, 19 F.E. R.C. (CCH) ¶ 63,062 (June 7, 1982).

At this point, in light of our opinion on the merits, the FERC should have very little concern that waiver of the FERC's retroactive application of the regulation will weaken the force of its precedent and ruling on the merits of this case. The FERC's decision, buttressed by our affirmance, serves as notice to all utilities that the regulations governing Account 151 will be very strictly construed.

Thus, we think it appropriate to remand this case to the FERC for reconsideration of the requested waiver, giving "meaningful consideration" of present circumstances, including our affirmance on the merits of the regulation.

In remanding, we would observe that, if the FERC now grants a waiver, it possesses discretion in determining the prudence, propriety and reasonableness of the attorney's fees and expenses claimed by the MP &L.

## III.  CONCLUSION

We affirm the FERC's decision interpreting Account 151. We remand the Commission's decision denying a waiver and remand to the agency for further consideration in light of this opinion. Neither party shall recover any costs.