# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3876

_____

The Mid-Continent Area Power Pool,　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　Petitioner,　　　　　　　*
　　　　　　　　　　　　　　　　　　　*　Petition for Review of
　　　v.　　　　　　　　　　　　　　*　an Order of the Federal Energy
　　　　　　　　　　　　　　　　　　　*　Regulatory Commission.
Federal Energy Regulatory　　　　　*
Commission,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　Respondent.　　　　　　　*

_____

Submitted: June 11, 2002

Filed: October 1, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

The Mid-Continent Area Power Pool (MAPP) petitions for review of an order issued by the Federal Energy Regulatory Commission (the Commission). The Commission determined MAPP was late in filing certain types of transmission service agreements (TSAs) and ordered MAPP to refund the time value of revenues collected under these TSAs. MAPP argues it was arbitrary and capricious for the Commission to assess the refund, because the Commission's previous orders did not require these TSAs to be filed. Although we affirm the Commission's interpretation of its previous orders, we remand the case for further proceedings involving the refund.

## I.    BACKGROUND

MAPP is a voluntary association of electric utilities with its main office in St. Paul, Minnesota.   The members of MAPP provide electrical power in seven midwestern states and portions of Canada.   These members "pool" their power through three types of transmission service: (1) long-term firm point-to-point service, (2) short-term firm point-to-point service, and (3) non-firm point-to-point service.[1]

MAPP provides power both to its members and to non-member utilities.  When MAPP provides power to a non-member utility, it must file a TSA with the Commission.  Before 1996, however, the Commission did not require MAPP to file TSAs for service MAPP provided to its own members.

In 1996, the Commission sought to address a perception that power pools were unjustly discriminating against non-members.   To accomplish this goal, the Commission promulgated Order No. 888.  Appendix D to Order No. 888 is a Pro Forma Open Access Transmission Tariff (the Pro Forma Tariff).  Section 13.4 of the Pro Forma Tariff requires power pools to offer their customers a standard form TSA for short-term firm and some long-term firm service, as well as to file the TSAs with the Commission.  Section 14.4 of the Pro Forma Tariff requires power pools to offer their customers a standard form TSA for non-firm service, as well as to file the TSAs with the Commission.  These provisions are essentially the same for short-term firm, long-term firm, and non-firm service, and they do not contain an exemption for service provided within a power pool.  See Promoting Wholesale Competition Through Open Access, Non-Discriminatory Transmission Service by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities, Order No.

---

[1]Short-term firm service involves the reservation or scheduling of service for a term of less than one year.  Long-term firm service involves service for a term of one year or more.  Non-firm service is provided on an "as available" basis.

888, FERC Stats. & Regs. ¶ 31,036, 61 Fed. Reg. 21540 (1996), codified as revised at 18 C.F.R. Pts. 35 & 385 (1999).[2]

Pursuant to Order No. 888, MAPP filed an open access transmission tariff (OATT) on December 24, 1996. The OATT submitted by MAPP did not include provisions on filing TSAs, as required under sections 13.4 and 14.4 of the Pro Forma Tariff in Order No. 888. The Commission accepted the OATT for filing purposes and allowed the OATT to become effective on March 1, 1997, subject to refund and to issuance of further orders. Mid-Continent Area Power Pool, 78 FERC ¶ 61,203 (1997).

On April 15, 1999, the Commission issued an order on the acceptability of the OATT filed by MAPP (the April 15, 1999 Order). In less than clear language, the April 15, 1999 Order addressed MAPP's proposals for filing TSAs:

> We note that MAPP eliminated the *pro forma* tariff provisions in Sections 13.4 and 14.4 (Service Agreements) dealing with service agreements. This apparently reflects MAPP's position that service agreements are not required when all customers are already signatories to the MAPP Agreement. Consistent with our directive that MAPP eliminate the membership restriction for service, we will direct MAPP to provide for service agreements in its revised tariff. In addition, we require that service agreements for long-term point-to-point services be filed with the Commission in a form that delineates the terms of service. Therefore, we direct MAPP to submit specification sheets for all long-

---

[2]For the revisions and clarifications of Order No. 888, see 76 FERC ¶ 61,009 (1996), 76 FERC ¶ 61,347 (1996), and 79 FERC ¶ 61,182 (1997), on reh'g, Order No. 888-A, FERC Stats. & Regs. ¶ 31,048, 62 Fed. Reg. 12,274 (1997), on reh'g, Order No. 888-B, 81 FERC ¶ 61,248, 62 Fed. Reg. 64,688 (1997), on reh'g, Order No. 888-C, 82 FERC ¶ 61,046 (1998), aff'd., Transmission Access Policy Study Group v. FERC, 225 F.3d 667 (D.C. Cir. 2000), aff'd sub nom., New York v. FERC, ___ U.S. ___, 122 S. Ct. 1012 (2002).

term point-to-point services that have been provided under the MAPP tariff.

Mid-Continent Area Power Pool, 87 FERC ¶¶ 61,075, 61,314 (1999). The April 15, 1999 Order did not expressly require MAPP to file TSAs for short-term firm and non-firm service to MAPP members.

On May 31, 2001, MAPP filed TSAs for long-term firm, short-term firm, and non-firm service, including service provided to MAPP members. In a letter order dated July 24, 2001 (the July 24, 2001 Order), the Commission accepted MAPP's filings. AEP Operating Cos., Docket No. ER01-2189 (2001). However, pursuant to agency policy, the Commission required MAPP to refund the time value of revenues collected under short-term firm and non-firm TSAs filed more than thirty days after the commencement of service. Id. The total refund assessed was approximately $180,000.

MAPP asked the Commission for a rehearing of the issues in the July 24, 2001 Order. In support of its request, MAPP argued that the requirement underlying the Commission's decision – that MAPP file TSAs for short-term firm and non-firm service within the power pool – was not contained in the Commission's previous decisions. As a fallback position, MAPP argued that if the requirement was not new, MAPP only failed to comply with it because the Commission's prior orders were confusing, and asked the Commission to waive the refund on this ground. The Commission rejected MAPP's arguments and denied rehearing. Mid-Continent Area Power Pool, 97 FERC ¶ 61,038 (2001).

MAPP now petitions us for review of the Commission's July 24, 2001 Order, arguing that the Commission's decision to apply the filing requirement was arbitrary and capricious. We have jurisdiction under 16 U.S.C. § 825*l*(b).

## II. DISCUSSION

The Commission's decision may not be set aside unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When an agency has adopted a general policy, "an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'" INS v. Yang, 519 U.S. 26, 32 (1996) (citing 5 U.S.C. § 706(2)(A)) (alternation in original). MAPP claims that the July 24, 2001 Order was an irrational and unexplained departure from the Commission's prior policy on filing TSAs.

The July 24, 2001 Order did not depart from the Commission's prior decisions. According to MAPP, the July 24, 2001 Order broke new ground by requiring that MAPP file TSAs for short-term firm and non-firm service to its own members. That requirement, however, was implicitly contained in Order No. 888, which the Commission issued in 1996. Order No. 888 required power pools to file TSAs for long-term firm, short-term firm, and non-firm service, and it did not create an exemption for service provided within a pool. The Commission did not reverse this policy in the April 15, 1999 Order. The April 15, 1999 Order noted that MAPP did not believe it was required to file TSAs for service within the pool, but nonetheless directed MAPP to revise its tariff to "provide for service agreements." Like Order No. 888, the April 15, 1999 Order did not exempt TSAs for service within the pool.

Neither Order No. 888 nor the April 15, 1999 Order specifically required power pools to file TSAs for short-term firm or non-firm service within the pool. And in contrast to its lack of clarity on short-term firm and non-firm TSAs, the April 15, 1999 Order expressly required that TSAs be filed for long-term firm point-to-point service.[3] In light of the Commission's failure to express clearly its policy on

_____

[3]The Commission apparently singled out TSAs for long-term firm service in order to emphasize the requirement that such TSAs be filed with specification sheets

-5-

short-term firm and non-firm TSAs, we can see how MAPP might have been confused about the exact meaning of the Commission's prior orders.

Nevertheless, we must give deference to the Commission's interpretation of its own orders. See Minn. Power & Light Co. v. FERC, 852 F.2d 1070, 1072 (8th Cir. 1988). The language of Order No. 888 and the April 15, 1999 Order is broad enough to encompass a requirement that MAPP file TSAs for short-term firm and non-firm service to MAPP members. We therefore uphold the Commission's determination that MAPP was required to file TSAs for short-term firm and non-firm service within its power pool.

There remains a question about whether the Commission should have waived the refund in this case. In Minnesota Power & Light, we affirmed the Commission's interpretation of its regulations, but remanded the case for further consideration of whether the interpretation should be imposed retroactively. Id. at 1073-74. We did so because our opinion affirming the Commission's interpretation changed the circumstances on which the Commission based its decision. Id.

In this case, the Commission's refusal to waive the refund was based, in part, on a determination that its prior orders were clear. As we have explained above, the Commission's prior orders did not clearly require MAPP to file TSAs for short-term firm and non-firm service. Considering the lack of definiteness in the Commission's prior decisions, and the Commission's mistaken opinion that its prior decisions were clear, we remand this matter to the Commission for further consideration of whether to waive the refund in this case. We are confident the Commission will fairly reconsider the refund issue.

---

– something not necessary for short-term firm and non-firm TSAs. This purpose, however, was not clear from the text of the April 15, 1999 Order.

## III. CONCLUSION

Because the Commission did not depart from its prior rulings when it determined that MAPP was required to file TSAs for short-term firm and non-firm service to MAPP members, we affirm the Commission's interpretation of its prior orders. However, because the Commission's prior decisions were not clear, as the Commission ruled they were, we remand this case to the Commission for further consideration of whether the refund imposed upon MAPP should be waived.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.