### METRO–GOLDWYN–MAYER STUDIOS, INC., Plaintiff,

v.

### Marybeth PETERS, U.S. Register of Copyrights, Defendant.

### No. CIV.A. 03–0179(RMC).

United States District Court, District of Columbia.

March 24, 2004.

David Evan Kendall, Williams & Connolly LLP, Washington, DC, for Plaintiff.

James J. Gilligan, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION[1]

COLLYER, District Judge.

This case asks whether Marybeth Peters, U.S. Register of Copyrights, properly refused to accept Metro–Goldwyn–Mayer Studios, Inc.'s ("MGM") claim for statutory royalties because MGM's claim arrived in Washington, D.C., on August 2, 2001, and MGM has no date stamp from the U.S. Postal Service to show that it had been mailed by July 31, 2001. Finding that Ms. Peters acted properly, the Court will grant her motion for summary judgment[2] and deny MGM's cross motion for summary judgment.

## BACKGROUND FACTS

### A. *Statutory Scheme*

Cable television operators and satellite carriers that re-transmit certain broadcast television signals must periodically deposit prescribed fees with the Copyright Office of the United States Library of Congress ("Copyright Office" or "Office") for distribution to those who own the copyrights for the re-transmitted programming.[3] During the month of July in each year, copyright holders may file claims to these royalties with the Librarian of Congress, in accord with regulations issued by the Copyright Office.[4]

This statutory scheme was established in 1976, when Congress directed cable operators to pay royalties. Because it would be impractical to require individual negotiations over every re-transmission, Congress established a compulsory license allowing cable systems to re-transmit broadcast signals, conditioned on payment of a statutory royalty. Copyright Act of 1976, Pub.L. No. 94–553 § 101, 90 Stat. 2541, 2551–55 (1976) (*codified as amended* at 17 U.S.C. §§ 111(c), (d)); *see also Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.*, 836 F.2d 599, 602–03 (D.C.Cir.1988). In 1988, Congress applied the same rationale to require satellite carriers to pay the same kinds of licensing fees. *See* 17 U.S.C. § 119.

The Act initially established the Copyright Royalty Tribunal to distribute the royalties collected.[5] The Tribunal first adopted claims-filing regulations in 1978, according to which claims were timely if mailed "prior to the expiration of the statutory period and ... accompanied by a certificate stating the date of [mailing]." 43 Fed.Reg. 24528, 24529 (June 6, 1978).

---

1. Also pending before the Court is a case that presents similar issues and is in the same procedural posture, *Universal Studios LLLP, et al. v. Peters*, No. 03–1082(RMC). The Court is contemporaneously and separately issuing decisions in both of these cases. For ease of review, should it be sought, a full decision—although somewhat duplicative—is issued in each case.

2. Ms. Peters filed a Motion to Dismiss or for Summary Judgment, which the Court treats as a Motion for Summary Judgment.

3. Copyright Act, as amended by the Satellite Home Viewer Act of 1988, 17 U.S.C. §§ 111(d)(1)-(3), 119(b)(1)-(3).

4. The Copyright Act specifies that "[d]uring the month of July in each year, every person claiming to be entitled to statutory license fees for secondary transmissions shall file a claim with the Librarian of Congress ...." 17 U.S.C. § 111(d)(4)(A); *see also id.* at § 119(b)(4)(A). The claimant "shall file [its] claim ... in accordance with requirements that the Librarian of Congress shall prescribe by regulation." *Id.* at § 111(d)(4)(A); *see also id.* at § 119(b)(4)(A).

5. Pub.L. 94–553, § 101, 90 Stat. 2541, 2555, 2594–96. *See Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 371 (D.C.Cir.1982).

Ten years later, the Tribunal adopted new rules providing that claims would "be considered timely only" if they were "received ... during the month of July" or they bore "a July U.S. postmark." 54 Fed.Reg. 12614, 12619 (Mar. 28, 1989). In 1991, the Tribunal added new language stating that "[c]laims dated only with a business meter that are received after July 31 will not be accepted as having been filed during the month of July." 56 Fed.Reg. 2437, 2438 (Jan. 23, 1991).

In 1993, Congress abolished the Tribunal and transferred its functions to the Librarian, the Register, and *ad hoc* copyright arbitration royalty panels.[6] The Copyright Office adopted interim rules governing applications for royalty claims in May 1994; the interim rules retained the requirement that claims must be either received during the month of July or bear a July U.S. postmark. *See* Interim Regulations, 59 Fed.Reg. 23964, 23993 (May 9, 1994).

According to the final regulations, issued in December 1994, claims for cable and satellite carrier royalties are considered "timely filed" if they are hand-delivered to the Copyright Office during the month of July or arrive by mail with a July U.S. postmark. 37 C.F.R. §§ 252.4(a), 257.4(a). Claims arriving after July 31 and dated with only a business meter are not accepted as "timely filed." *Id.* at §§ 252.4(c), 257.4(c). However, a claimant may "nonetheless" establish that a claim bearing a business meter mark was timely filed, even if received after July 31, if it was sent in a specified manner and the applicant can provide a certified mail receipt bearing a July U.S. Postal Service date-stamp. *Id.* at § 252.4(e) ("In the event that a properly addressed and mailed claim is not timely received ... a claimant may nonetheless prove that the claim was properly filed if it

was sent by certified mail return receipt requested, and the claimant can provide a receipt bearing a July date stamp of the U.S. Postal Service .... No affidavit of an officer or employee of the claimant, or of a U.S. postal worker will be accepted in lieu of a receipt."); § 257.4(e) (same).

In comments to the final rules, the Copyright Office explained the significance of a U.S. postmark under the regulations:

> The statute requires that [a] claim be with the Librarian during the month of July, arguably meaning in his possession. However, we accept the submission of a claim to the U.S. Postal Service, as statutorily sufficient, providing it bears a July U.S. postmark. The postmark is an acknowledgment that the claim was validly tendered with the U.S. Government in the month of July.

59 Fed.Reg. 63025, 63039 (Dec. 7, 1994). The Copyright Office specifically quoted the longstanding position of the Copyright Royalty Tribunal to the same effect:

> [We do] not believe that our insistence that either a claim be received in our office during July or that it bear a July U.S. postmark is too restrictive. The claim itself is easy to prepare. No government forms are necessary. The information that is required can be put on one page. Further, the claimant has six months from the close of the calendar year to prepare it, and the entire month of July to submit it .... Our proposed rule provides a bright line test which should end all questions of fact regarding the timeliness of the claim.

*Id.* (quoting 54 Fed.Reg. 12614, 12615 (Mar. 28, 1989)). This point was emphasized by comments published by the Copyright Office in 1996 in connection with a technical amendment to the rules. Techni-

---

**6.** Pub.L. No. 103–198, §§ 2–6, 107 Stat. 2304, 2304–13 (1993).

cal Amendments, 61 Fed.Reg. 63715, 63716, 63718 (Dec. 2, 1996). At that time, the Office advised that "[t]he only acceptable proof of a timely filing ... is the certified mail return receipt bearing a U.S. Postal Service mark demonstrating that the mailing occurred during the relevant time period ...." *Id.* at 63716.

Despite the apparent clarity of these regulations and commentary, the Copyright Office has on occasion accepted mailed claims that were not received in July when the claimant could not produce a certified mail receipt:

> Recently, the Copyright Office reviewed a request for reconsideration of a claim which the Office received on August 1, 1995[,] with only a business meter postmark. After further consideration of the facts, the Office has decided to accept all properly addressed claims with only a business meter postmark if they were actually in the Copyright Office on August 1, 1995, since the Office has an absolute assurance that these claims must have been deposited with the U.S. Postal Service during the month of July in order to reach the Office by August 1, 1995. The Office, however, will not accept any properly addressed claim with only a July business meter postmark which arrives in the Office on August 2, 1995, or later, because the absolute assurance of a July mailing with the U.S. Postal Service does not apply.

*In re King Broadcasting Co. (KTVB–TV),* A.R. Tab N at 0406.

### B. *Factual Summary*

MGM is a famous motion picture studio whose roaring lion trademark is legitimately called "a paradigm symbol of American entertainment." Memorandum of Points and Authorities in Support of Plaintiff's Cross Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss or for Summary Judgment at 2 ("Pltf.'s Motion"). MGM has filed claims for cable and satellite royalties in each year that such royalties have been available. *Id.* MGM anticipates that it would receive approximately $10 million in royalties for 2000 if its claim were accepted by the Copyright Office. *Id.* at 3 n. 3.

The following facts are not in dispute and are taken from Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute and Plaintiff's Opposition to Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute:

- MGM's claims for year 2000 were delivered to the Copyright Office by certified mail on August 2, 2001, in an envelope bearing a July 30 business meter mark, but which was not postmarked by the U.S. Postal Service.

- On November 2, 2001, the Copyright Office returned MGM's claims, with a cover letter noting that, because they had not been received during July, and did not bear a July postmark, they had not been timely filed.

- Further, the Copyright Office informed MGM that it would accept and process its claims "**ONLY** if you can provide proof that the claim was properly addressed and had a July postmark of the U.S. Postal Service." *See* A.R. at 0011 (emphasis in original).

- The Copyright Office gave MGM until November 26, 2001, to submit the required proof that its claims had been timely filed.

- MGM responded on November 21, 2001, with the following evidence of its timely submission:

 a. An affidavit from an MGM employee that she had placed MGM's claims in a properly addressed envel-

ope on July 30, 2001, that she had affixed a label for certified mailing, and that she had delivered the envelope to the MGM mail room.

b. An affidavit from another MGM employee that the certified mail received in MGM's mail room in July 2001 was affixed with postage from a Pitney–Bowes postage meter and then picked up by courier for same-day delivery to the Post Office in Santa Monica, California.

c. A letter from a Pitney–Bowes employee stating that there is "no practical way" for a user to backdate the postage meter. *See* A.R. 0044. This letter was accompanied by a photocopy of the envelope in which the claims had been mailed, postmarked July 30, 2001, by the Pitney–Bowes postage meter.

d. An affidavit from a manager at the U.S. Postal Service in Santa Monica, CA, and information from the USPS website, indicating that the normal time for delivery of first-class mail sent from Santa Monica CA to Washington, D.C., is three to five days.

- On December 19, 2001, MGM supplemented this evidence with tracking confirmation from the U.S. Postal Service that MGM's claims were received by the Copyright Office on August 2, 2001. No one at MGM has been able to locate the white certified mail receipt that had been attached to the claims envelope.

- MGM's submissions did not include a certified mail receipt for its claims date-stamped in July by the U.S. Postal Service.

- MGM received a green certified mail receipt confirming delivery of MGM's claims to the Copyright Office, date-stamped August 2, 2001, but discarded it in October 2001 believing that MGM's claims had been accepted by the Copyright Office.

- MGM submitted a letter dated November 26, 2001, to the Copyright Office, citing the evidence summarized above as proof that its claims were mailed on July 30, 2001, and alternatively asking that the Copyright Office waive the rules.

- On December 2, 2002, the Register issued her decision rejecting MGM's request to accept its claims as timely filed. The Register found that MGM's claims arrived on August 2, 2001, in an envelope bearing only a July 30 business meter mark, and that MGM had thereafter failed to produce a certified mail receipt for its claims with a July date stamp by the U.S. Postal Service. The Register denied MGM's request for a waiver, concluding that there were no special or unique circumstances.

- On these grounds, the Register rejected MGM's claims for year 2000 royalties.

This lawsuit was then filed seeking review of the Register's decision.

## LEGAL STANDARDS

Under the APA, 5 U.S.C. § 706(2)(A), agency action will be reversed if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.; see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–15, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[7] As the Supreme Court has ex-

---

**7.** The Copyright Office asserts that this Court does not have jurisdiction to review chal-

plained, "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park,* 401 U.S. at 415, 91 S.Ct. 814. However, "[w]hile this standard is deferential, courts do not hear cases merely to rubber stamp agency actions. To play that role would be tantamount to abdicating the judiciary's responsibility under the Administrative Procedure Act." *Conservation Law Found. v. Evans,* 209 F.Supp.2d 1, 8 (D.D.C.2001) (internal quotation omitted).

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), FED. R. CIV. P. 56(c). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Any factual dispute must be capable of affecting the substantive outcome of the case to be

"material" and "genuine." *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

## ANALYSIS

There is no dispute that MGM's claim for year 2000 arrived on August 2, 2001, that it was postmarked by a Pitney–Bowes business meter and not by the U.S. Postal Service, and that MGM cannot produce a white receipt from USPS proving that it was mailed in July 2001. The undecided issues are whether the Copyright Office (1) properly applied its own regulations; (2) erred in its application of the "absolute assurance" rule, (3) should have waived the deadline, or (4) deprived MGM of constitutional due process.

### A. *Application of the Act and Regulations*

■ The Copyright Act requires that claimants, "during the month of July," must file claims with the Librarian of Congress "in accordance with requirements that the [Copyright Office] shall prescribe by regulation." 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A). The requirements are simple and unambiguous. It was not arbitrary or irrational for the Copyright Office to continue the Tribunal's "bright line test" that "achieves greater efficiency" and avoids "problems with late filed claims," 53 Fed. Reg. at 43900, in order to "eliminate all questions of fact regarding the timeliness of claims." 59 Fed.Reg. at 63039.

MGM argues that the Copyright Office's refusal to consider its additional evidence is arbitrary and capricious and unsupport-

---

lenges to the claims filing regulations because the filing requirements "involve[ ] a matter committed to agency discretion by law." Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or

for Summary Judgment at 22 ("Def.'s Motion"). Because the Court upholds the validity of the agency's action on the merits, it does not address this argument.

ed by the Copyright Act and its implementing regulations. *See* Pltf.'s Motion at 13. This argument is predicated on MGM's assumption that it timely filed its claims by mailing its envelope in July, and that it is therefore arbitrary and capricious for the Register to exclude evidence that proves timely mailing.

> MGM argues, and Defendant *does not contest*, that it timely mailed its envelope in July—within the period dictated by Congress and regulated by the Copyright Office. MGM does not seek relief from a statute of limitations period that it has missed; MGM seeks to have probative evidence that its claims were filed *within* the statutory period considered by the Copyright Office.

*Id.* at 16 (emphasis in original). The argument fails, however, because there is no support for the proposition that, standing alone, mailing is sufficient. The regulations provide that mailed claims are timely if "[t]hey are addressed to: Copyright Arbitration Royalty Panel, P.O. Box 70977, Southwest Station, Washington, DC 20024, *and* are deposited with sufficient postage with the United States Postal Service *and* bear a July U.S. postmark." 37 C.F.R. §§ 252.4(a)(2), 257.4(a)(2) (emphasis added).[8] Thus, the Copyright Office does not merely require mailing of claims in July to be timely, but mailing in July *with a U.S. Postal Service postmark*. The additional evidence that MGM proffers simply is not proof of a July postmark.[9]

■ MGM further argues that the regulations do not exclude proof of timely filing other than the certified mail receipt and that Register misconstrued her own regulations in excluding such proof. *See* Pltf.'s Motion at 14 ("But even Defendant's own regulations do not support her categorical refusal to consider all of MGM's evidence .... [The] regulations explicitly foreclose only proof submitted in the forms of affidavits of claimant's employees or of U.S. Postal workers."); Combined Reply Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment, and Memorandum of Points and Authorities in Opposition to Plaintiff's Cross–Motion for Summary Judgment at 8–9 ("Pltf.'s Reply"). This erroneous interpretation, MGM argues, caused the Copyright Office to refuse "to consider ample evidence demonstrating MGM's timely filing, including proof of normal U.S. postal delivery times from its own files and information regarding the inability to back-date business meters." Pltf.'s Reply at 9. Because MGM is challenging the Register's interpretation of a Copyright Office regulation, this Court must give "controlling weight"[10] to the Register's interpretation, "unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the [Register's] intent at the time of the regulation's promulgation.'" *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (quoting *Gardebring v. Jenkins*, 485

---

**8.** In contrast, the first rules adopted by the Copyright Tribunal provided that a claim would be deemed "timely filed" if it were "deposited with the U.S. Postal Service ... prior to the expiration of the statutory period." 43 Fed.Reg. 24528, 24529 (June 6, 1978).

**9.** *See, e.g.*, A.R. Tab G at 0065 n. 1 ("The USPS tracking confirmation report which you provided does not provide the required information. It states the date and time that the

claim was received by the Copyright Office, but contains no information about when the claim was deposited with the USPS."); 0066 (The affidavit from the Pitney–Bowes employee and the business meter mark "[a]t best ... may serve to establish the date that the meter mark was placed on the envelope.").

**10.** *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988)); *see also Tozzi v. HHS,* 271 F.3d 301, 311 (D.C.Cir.2001); *Associated Builders & Contrs., Inc. v. Herman,* 166 F.3d 1248, 1254 (D.C.Cir.1999). Acceptance of only a return-receipt stamped by the Postal Service in July, and nothing more, completely fits within this regulatory scheme. The stamp on the receipt essentially serves as an alternative July U.S. Postal Service postmark. The comments to the regulations consistently emphasize the necessity of a postmark as proof of timely filing in the overarching regulatory scheme. *See* 59 Fed.Reg. 63025, 63039 (Dec. 7 1994) (Rejecting suggestion to allow July mailing from Mexican and Canadian post offices and noting that "we accept the submission of a claim to the U.S. Postal Service, as statutorily sufficient, providing it bears a July U.S. postmark."). The comments to the technical amendments further evince that the Register's present interpretation and exclusion of other evidence is consistent with the intent of the regulations. *See* 61 F.R. 63715, 63716 ("[T]he only acceptable proof of a timely filing, however, is the certified mail return receipt bearing a U.S. Postal Service mark").

MGM specifically argues that the language of the regulatory safe harbor found at 37 C.F.R. §§ 252.4(e), 257.4(e) is permissive. *See* Pltf.'s Reply at 8–9 ("[A] claimant *may* nonetheless prove that the claim was properly filed if it was sent by certified mail return receipt requested and the claimant can provide a receipt bearing a July date stamp of the U.S. Postal Office.") (emphasis in original) (quoting 37 C.F.R. §§ 252.4(e), 257.4(e)). According to MGM, the Register's interpretation of this language as mandatory is arbitrary and capricious because the regulation uses the permissive "may" and not the mandatory "shall" or "must." Since the regulation offers a means, other than a postmark on

the envelope, to establish that the claim was submitted to and processed by the Postal Service in July, its use of "may" is linguistically correct. Given the deference this Court must pay to the Register's interpretation of her own regulations, MGM's statutory construction argument fails. *See Trinity Broad. of Fla., Inc. v. FCC,* 211 F.3d 618, 625 (D.C.Cir.2000) (deferring to agency's interpretation of regulation that was challenged and finding that the court's " 'task is not to decide which among several competing interpretations best serves the regulatory purpose.' ") (quoting *Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. 2381).

In sum, the Register's interpretation of the Copyright Act and implementing regulations, and her corresponding decision that MGM failed to comply with the filing requirements, is not arbitrary and capricious.

**B.** *"Absolute Assurance"*

■ MGM argues that the Copyright Office has adopted an "absolute assurance" rule governing the acceptance of late-filed claims and that it was arbitrary and capricious and contrary to law for the Copyright Office to fail to apply that rule in this case. *See* Pltf.'s Reply at 3 ("[I]f it has 'absolute assurance' of delivery [to USPS] in July, the Copyright Office *will* accept a claim received in August, even if it does not bear a U.S. postmark and even if the claimant cannot produce a white certified receipt." (emphasis in original.)). The "absolute assurance" rule arises from *In re King Broadcasting Co. (KTVB–TV),* A.R. Tab L at 0142, where the Copyright Office announced that it would accept as timely filed claims that are received no later than August 1 of each year even if they lack a U.S. Postal Service postmark. MGM asserts that its proof demonstrates that the Copyright Office has "absolute assurance"

that it mailed its claim for year 2000 during the month of July 2001. Pltf.'s Reply at 3 (Because they were mailed from California, "[t]he Copyright Office has absolute assurance that MGM's claims were mailed in July."). While acknowledging that the Copyright Office limits its "absolute assurance" rule to claims received on August 1, MGM argues that such a limitation is "completely arbitrary" and that California mail "is legally entitled to benefit equally" as mail from Virginia and Maryland that might be within a one-day mailing radius of the Copyright Office. *Id.* at 3–4.

MGM's argument cannot withstand the reasoning of the Copyright Office. The Office has established one limited exception to its clear and straightforward rules: it will accept as timely an application delivered by the U.S. Postal Service to its offices on August 1, with or without an official date stamp. It will not accept overnight courier deliveries on the same date, even though it can be proved that they, too, were sent during the month of July. But MGM did not rely on an overnight delivery service; it argues that it is unfair to accept claims that might be delivered in overnight mail from Maryland or Virginia and deny claims from California, which cannot reach Washington, D.C. by August 1, if mailed on July 31.[11] The argument partially misconstrues the exception, which could apply to a claim filed from California just as to a claim from Maryland if, for instance, a California copyright holder mailed its claim application with postage from a business meter on July 25 and it was delivered by the Postal Service on August 1. More directly, the relevant question is not whether there is an absolute assurance in *one particular* case, but whether there is an absolute assurance in *all* cases, regardless of the Post Office from which a claim may be sent. No individualized fact-finding is necessary to determine that a properly addressed claim bearing a business meter postmark that is received in the Copyright Office on August 1 was initially deposited with and processed by the Postal Service in July. In contrast, individualized fact-finding is necessary to determine when claims received after August 1 were initially deposited with and processed by the Postal Service.[12] MGM admits that it is possible for mail from some locales to reach the Copyright Office in one day. Pltf.'s Reply at 3–4. Therefore, it was not arbitrary and capricious for the Office to decline to apply the "absolute assurance" rule in this case.

## C. Refusal to Waive the Rules

▮▮▮ The Copyright Office may waive the rules on timely filing but refused to do

---

11. It is noteworthy that MGM attempts to utilize the "absolute assurance" exception, but that its own evidence is not absolute. Rather, an affidavit from the Postal Service on which it relies states that it is *"virtually impossible"* for mail to be delivered coast-to-coast overnight. Pltf.'s Motion, Exh. 5 (emphasis added). In addition, MGM argues that the meter date necessarily reflects that date on which the claim was processed by the Postal Service. This argument fails because its own evidence shows that "[p]ostal employees are not always able to catch stale meter date mail." A.R. Tab C at 0051.

12. MGM reviewed the Copyright Office files for exhibition years 1993–2001 and found 103 claims that were mailed from the West Coast. It argues that it "did not find a *single* instance where a claim traveled coast-to-coast overnight" and that the Copyright Office therefore has information in its own files confirming MGM's timeliness argument. Pltf.'s Motion at 4. The Court, however, will not require the Copyright Office to maintain a running spreadsheet of claims showing delivery times, nor to review its years of files to determine how long it takes claims mailed from particular locales to reach the Office, each time that it is confronted with a timeliness question.

so for MGM's year 2000 royalty claim. MGM argues that the Register abused her discretion by refusing to waive timely filing in the instant case because (1) the Office has failed to waive its regulations in a consistent manner and (2) MGM is not similarly situated to prior claimants whose late filings were rejected. An agency's grant or denial of a waiver of its regulations is reviewed for abuse of discretion. *See Green Country Mobilephone, Inc. v. FCC,* 765 F.2d 235, 238 (D.C.Cir.1985); *see also Omnipoint. Corp. v. FCC,* 213 F.3d 720, 723 (D.C.Cir.2000) (Denial of waiver will not be overturned "unless the agency's reasons are so insubstantial as to render that denial an abuse of discretion."). To succeed on a claim of disparate treatment in the context of waivers, a claimant "must demonstrate that the [agency's] action was 'so inconsistent with its precedent as to constitute arbitrary treatment amounting to an abuse of discretion.'" *Lakeshore Broad., Inc. v. FCC,* 199 F.3d 468, 476 (D.C.Cir.1999) (quoting *New Orleans Channel 20, Inc. v. FCC,* 830 F.2d 361, 366 (D.C.Cir.1987)). "Rigid and consistent adherence to a policy will be upheld if valid." *Bellsouth Corp. v. FCC,* 162 F.3d 1215, 1225 (D.C.Cir.1999).

### 1. Consistency in Applying the Rules

■ MGM first rests its abuse of discretion argument on its contention that MGM "clearly acted in good faith and the *de minimis* delay that did result caused no prejudice to any party." *NLRB v. Washington Star Co.,* 732 F.2d 974, 976 (D.C.Cir.1984); *see also NTN Bearing*

*Corp. v. United States,* 74 F.3d 1204 (Fed. Cir.1995). If *Washington Star* set the standard in this circuit for requiring agencies to accept late filings, MGM's argument might well be a winning one. However, *Washington Star* stands for the not-unusual proposition that an agency cannot inconsistently apply a deadline and then refuse to waive the deadline in the instance of a late filer who has acted in good faith and without prejudice to others.

If the Board articulates its reasons for a strict rule that requires filings to be in hand on the due date and announces that it will apply this rule uniformly or with specific stated exceptions then this court would be obliged to defer to the Board's discretion and authority. Under such circumstances, there would be no reason not to enforce the Board's order on request. The present sometimes-yes, sometimes-no, sometimes-maybe policy of due dates cannot, however, be squared with our obligation to preclude arbitrary and capricious management of the Board's mandate.

732 F.2d at 977; *see also id.* ("Given the Board's record of inconsistent application of the filing deadline, we find the decision of the Board here puzzling to the point of arbitrariness."). The Copyright Office has engaged in formal rulemaking to establish the filing requirements.[13] Its rules do not suffer from the "opaque captions and curious wording of the pertinent NLRB regulations," *id.* at 976, that caused good-faith confusion in *Washington Star.* These rules

---

**13.** The Copyright Office specifies that it will rely on a U.S. Postal Service postmark of a July mailing to accept a claim received in August. By practice and a commentary to the 1996 Technical Amendments, the Copyright Office clarified that it would accept a claim received after July 31 with a business postage meter postmark only if the sender could produce a U.S. Postal Service receipt to prove July mailing. While MGM tries to argue that the commentary was not part of any formal rulemaking and is not worthy of court deference, the Court finds that it is entirely consistent with the formal regulations and the requirement that a claimant must prove, *via* an official mark of the USPS, that it timely filed its claim.

are the model of clarity and brevity. Unlike the NLRB, which could give no specific policy concern to support its refusal to accept a filing one day late, here the Copyright Office has identified—in its regulations and in this litigation—the need for clarity, predictability, and efficiency that its "bright line" rule assures.

MGM attempts to bring itself within the scope of *Washington Star* by pointing to two instances where the Office has waived the strict application of the regulations: the "absolute assurance" rule and *Brissette TV*. Contrary to MGM's arguments, however, these examples provide no support for the argument that, under the holding of *Washington Star*, the Copyright Office should have waived its timeliness requirements.

### a. Absolute Assurance

As discussed above, the Copyright Office has adopted a policy whereby it will accept as timely those claims that arrive by USPS mail on August 1, regardless of whether the claimant can produce evidence of a U.S. postmark. *See King Broadcasting*, A.R. Tab L at 0142. This rule does not run afoul of *Washington Star*. The court in *Washington Star* explicitly noted that it would be "obliged to defer to the Board's discretion and authority" in those instances where the agency adopted a "specific stated exception" to an otherwise strict rule. *Washington Star*, 732 F.2d at 977. In *King Broadcasting*, the Office adopted a specifically stated exception, within which MGM's claim admittedly does not fall. Even if this did amount to an inconsistency on the part of the Copyright Office, MGM is not similarly situated to those claimants whose claims arrive on August 1. As discussed *supra*, the necessity for individual fact-finding differentiates MGM's claim (and all other claims that arrive on August 2 or later) from all claims that arrive on August 1. The Register's

refusal to treat MGM's claim as similar to those that arrive on August 1 was not arbitrary and capricious.

### b. Brissette TV

The Copyright Royalty Tribunal accepted a claim filing from Brissette TV of Odessa, Inc., when it was timely mailed but returned "due to lack of an adequate address." *In re Brissette TV*, A.R. Tab J at 0128. Based on Brissette's representation and its history of timely filing, the Copyright Royalty Tribunal accepted the claims application that was received long after August 1, 1993. The statutory amendments that abolished the Copyright Royalty Tribunal and transferred its responsibilities to the Librarian, Register, and arbitration panels caused the Copyright Office to announce that it would administer "a radically different approach for . . . distributing royalties" under the new law and did not consider itself merely "a successor agency" to the Copyright Royalty Tribunal. Notice of Proposed Rulemaking, 59 Fed.Reg. 2550, 2551 (Jan. 18, 1994). In the same Notice, the Copyright Office stated that it did not consider itself bound by the Tribunal's precedents. *Id. Brissette TV* is not precedent in the Copyright Office and the Register therefore did not abuse her discretion in refusing to consider MGM's history of timely filings.

### 2. Similarity to Other Untimely Claimants

Implicitly acknowledging that the Register consistently rejects as untimely other claims that arrive after August 1, MGM attempts to differentiate itself from those claimants. *See* Pltf.'s Motion at 24 ("To the contrary, each involved claims where Defendant arguably did not have 'absolute assurance' of timely filing because[ ] the claimant admitted the claim was not timely filed . . . or because based on the date they were received, it was conceivable they

were mailed in August."). MGM fails to distinguish the prior cases. In fact, in many of the cases, the claimants attempted to rely on, and the Copyright Office rejected, evidence and arguments similar to those MGM proffers. *See* A.R. Tab N (employee's declaration and July 31 business meter mark); Tab O (employee's declaration, July 31 business meter mark, and assertion of undue hardship to deprive claimant of funds); Tab P (report from Pitney–Bowes mailing machine, letter from Postal Service regarding procedures for accepting business meter mail, and assertion of significance of amount of claim based on claimant's status as a non-profit); Tab Q (July 29 business meter mark and attorneys' affidavits regarding time of mailing and Postal Service procedures for handling business meter mail); Tab R (July business meter mark and certified mail receipts with handwritten dates); Tab S (July business meter mark and offer of attorney affidavit regarding date and means of mailing); Tab T (July business meter mark and letter regarding date of mailing and Post Office procedures for handling business meter mail). This record does not differentiate MGM or cast doubt on the Register's consistency.

### D. *Due Process*

■ For purposes of summary judgment, the parties are in agreement that MGM has a property interest in its claim to cable and satellite royalties for year 2000. Based on this property interest, MGM challenges "the content of the regulations" under due process principles. Pltf.'s Motion at 26 n. 20. The Register denied MGM's claims because, "[e]ven if ... claims were sent by certified mail on July 30, 2001, only the receipt, bearing a July date stamp by the USPS, is proof of a timely filing." A.R. Tab G at 0065. MGM argues,

This represents the creation of an irrebuttable presumption by [the Copyright Office] that the absence of such a receipt to evidence a July mailing means that such mailing did not occur .... An irrebuttable presumption here is irrational because the absence of this one document does not necessarily mean that the mailing was not made in July. Application of this presumption obviously deprives MGM of the right to a fair determination of whether its claims were in fact timely mailed.

Pltf.'s Motion at 26. The Register responds that MGM misconstrues the Copyright Act and its regulations by equating mailing with filing. Def.'s Reply at 34. The Register also argues that MGM's primary precedent, *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), is an inapplicable "retired" decision. *Id.* at 28.

The Register has the better side of the argument and the Court finds no due process violation on these facts.

The Copyright Act requires that claims be "file[d] with the Librarian" in July of each year "in accordance with requirements that the Librarian of Congress shall prescribe by regulation." 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A). The regulations do not require that claims be mailed but allow mailing as one way to get claims to the Librarian. Similarly, the rules do not provide that a claim is filed if it is mailed in July. Were that so, MGM's year 2000 claims would have, indeed, been "filed." Instead, the rules state that claims that meet certain conditions will be deemed timely "filed with the Librarian" even if received after July 31, *i.e.*, if they have a date stamp by USPS during the month of July. As a result, MGM's argument that the regulations "represent[ ] the creation of an irrebuttable presumption by Defendant that the absence of such a re-

ceipt to evidence a July mailing means that such mailing did not occur," is misplaced. Pltf.'s Motion at 26. The relevant question is whether a claim was timely *filed*, not whether it was timely *mailed*, a critical distinction. The regulations do not "presume" anything. The only effect of the rules is that those claims that arrive after the deadline and do not have a July USPS date stamp have not met the conditions for being deemed timely.

The Register could, of course, have promulgated rules that require actual receipt by the Librarian on or before July 31 for a timely filing. Such a rule would be consistent with the statutory language that claims be "filed with the Librarian." It would, however, impose hardship on persons outside the immediate environs of Washington, D.C., and especially on those in remote locations whose mail service, while available, may not be predictable. For this reason, the Court views the rule's willingness to rely on a USPS date stamp, adopted first by the Tribunal and continued in amended form by the Copyright Office, as a suitable compromise. A claim received after July 31 is plainly and simply late unless the sender can demonstrate that it has a USPS date stamp in the month of July, either on the envelope itself or on the return receipt.

There is no "irrebuttable presumption" contained within the Copyright Office rules that runs afoul of *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), assuming that holding is applicable to the instant matter. These long-standing deadlines operate with a conditional grace period. " 'Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.' " *Hamilton Sec. Group, Inc.*

*v. HUD*, 106 F.Supp.2d 23, 28 (D.D.C. 2000) (quoting *United States v. Locke*, 471 U.S. 84, 100–01, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)).

Parties have a due process right to show that they are "within the statutory terms of eligibility." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). MGM was given that opportunity. MGM acknowledged that its claim arrived after August 1 and that it could not submit a USPS date stamp to satisfy the conditions of the regulatory grace period. Its evidence of mailing was not overlooked; it was found wanting in proof of compliance with the filing requirements. The Copyright Office assured MGM of the process to which it was constitutionally due.

■ Regulations that affect solely economic activity, and not fundamental constitutional rights, enjoy a "presumption of constitutionality." *Ass'n of Bituminous Contractors v. Apfel*, 156 F.3d 1246, 1255 (D.C.Cir.1998) (quotation omitted). "[I]f there is any conceivable rational basis supporting it," such a regulation will be sustained. *Id.* The Copyright Office filing regulations meet this test. They provide alternative means for submitting claims: hand delivery or mail, without concern that claims submitted by mail with a USPS postmark will arrive late. They also save time, effort and financial resources within the Copyright Office that would be required if every late claim that had no USPS date stamp were entitled to an individual examination on proof of timely mailing. *See Weinberger v. Salfi*, 422 U.S. 749, 776–77, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (commenting on an agency's "legitimate interests in administrative economy"). The Court finds that they are consistent with the Copyright Act, rationally related to the mission of the Copyright

Office, and do not deprive claimants of due process rights.

### E. *Imposition of a Penalty*

MGM places much weight on the argument that refusal to accept its claims will result in the imposition of a "draconian penalty" that is disproportionate to MGM's error in failing to safeguard the certified mail receipt, citing *inter alia*, *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed.Cir.1995). In that case, NTN challenged calculations by the International Trade Administration ("ITA") relating to antidumping duties. The ITA had sent NTN its preliminary determinations and NTN then identified clerical errors made by NTN in its own submission to ITA.[14] ITA refused to correct the errors in the materials originally submitted by NTN because the corrections were untimely and the errors were not obvious on the face of the timely filing. The errors in question occurred because "NTN had to input its data onto a computer readable format design of ITA" and, in the conversion process, "NTN personnel allegedly made typing errors in transcribing the business records." *NTN Bearing Corp.*, 74 F.3d at 1207. "Correction of NTN errors would neither have required beginning anew nor have delayed making the final determination." *Id.* at 1208. MGM makes the argument that the absence of a white receipt to prove its timely filing is a similar "clerical error[ ]" that creates similar "draconian penalties," *id.*, and that the Copyright Office was arbitrary when it refused to waive the rules. MGM equates its loss of $10 million in royalties for year 2000 to an "excessive penalty" that the Copyright Office "seeks to impose."

MGM and NTN share the same burden in the loss of millions of dollars if they were deemed to have filed untimely with an administrative agency. To that extent, *NTN Bearing Corp.* has relevance to this case and MGM's degree of loss cannot be totally ignored. Unfortunately for the movie studio, however, the similarity ends at that point. NTN submitted timely calculations, in the process of which it was required to re-format its own data to fit the government's form. ITA acknowledged that it would not have held NTN to the timely submission rule if it could have "determine[d] from existing information of record that an error was made." *Id.* at 1208. Since it would be impossible to determine from the face of a document that clerical errors caused transposition of code numbers, the court found that ITA's distinction was arbitrary. *Id.* at 1208. MGM's circumstances are distinctly different: its filing was untimely at its origin, no requirement from the Copyright Office contributed to the problem, and the error was not an invisible clerical transposition but, more obviously, a missing document, albeit a small document. MGM failed to secure the white receipt from the Postal Service or to recognize its absence at a time when it might have been retrieved from the courier. This undoubtedly has caused teeth to gnash and heads to pound against walls but it cannot be traced in any way to the Copyright Office or any "paradoxical" distinctions in its rules. *Id.*

As noted, MGM also accuses the Copyright Office of "imposing a $10 million fine because MGM mailed a claim with the statutory framework, but could not locate a white certified receipt." Pltf.'s Reply at 8. The Court declines the invitation to view these facts as involving anything close to a

---

14. NTN also challenged a substantive determination made by ITA, which is not pertinent to the instant case.

fine. This case presents a much more straightforward situation. MGM's loss of year 2000 royalties is to be regretted but the Copyright Office did *not* impose a sanction when it determined that MGM had simply failed to comply with the statutory mandate to submit its annual claim "in accordance with the requirements that the Librarian of Congress shall prescribe by regulation." 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A). The requirements are longstanding, simple and well known; the Copyright Office has been clear and specific through formal rulemaking and consistent application; and other late claimants have been denied in the past.[15] Just as the degree of MGM's loss cannot be totally ignored, it cannot transmogrify the studio's admitted mistake into arbitrary action on the part of the government agency. " '[S]trict adherence to a general rule may be justified ... even if it appears to result in some hardship in individual cases.' " *BellSouth Corp. v. FCC,* 162 F.3d 1215, 1225 (D.C.Cir.1999) (quoting *Turro v. FCC,* 859 F.2d 1498, 1500 (D.C.Cir.1988)).

## CONCLUSION

This is a case brought about by a mistake that wasn't even noticed at the time. The mistake was made in California and not at the Copyright Office. The Register merely applied clear, simple and longstanding regulations to determine that MGM had not timely filed its claims for year 2000 royalties. Having reached that conclusion, the Register was required by the Copyright Act to deny MGM royalty payments. MGM has not shown that the Register violated the Copyright Act, the Administrative Procedure Act or the Constitution. Defendant's motion for summary judgment is GRANTED and Plaintiff's Cross Motion for Summary Judgment is DENIED.

A separate Order accompanies this Memorandum Opinion.

## ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion separately and contemporaneously issued this 24th day of March, 2004, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's Cross Motion for Summary Judgment is **DENIED**; and it is

**FURTHER ORDERED** that judgment is entered in favor of Defendant and against Plaintiff.

**SO ORDERED.**

---

**15.** MGM also relies on *Gulf Power Co. v. FERC,* 983 F.2d 1095 (D.C.Cir.1993), as support for its argument that the Register is imposing a harsh penalty. While in that case the Circuit Court did express concern over the monetary amount of the penalty, its decision remanding the action to the agency was based, in part, on the agency's previous grants of waivers and its failure to provide a reasoned explanation for distinguishing Gulf Power's application. *See id.* at 1100 ("FERC did not explain why it had not taken the same position regarding retroactive waivers in similar circumstances in the past.").